## MARY C. HOOPER, Appellant, v. STANDARD LIFE & ACCIDENT INSURANCE CO., Respondent.

**Kansas City Court of Appeals, June 3, 1912.**

1. **INSURANCE: Accident Policy: Evidence: Res Gestae.** Where in an action on an accident policy it appeared that a man was stricken with apoplexy in a street car, from which death ensued, and the question was whether the apoplexy was caused naturally or by a fall in the aisle of the car, it was shown that he was assisted out of the car and carried to his house nearby and laid on a couch; his arm ws bruised and pained him. The court refused to permit a witness for the plaintiff to testify as a part of the *res gestae*, that after he was put on the couch and within thirty minutes after being stricken, he stated that he fell in the car and hurt his arm. *Held*, not error.

2. ————: ————: **Disease: Accident: Direct Cause: Instructions.** Even though one is so diseased that death will shortly ensue, yet if the immediate cause of his death is an accident, and though he would not have died but for his diseased condition, liability on an accident policy of insurance is incurred. And instructions for the defendant which practically cut off such consideration by the jury are erroneous.

3. ————: ————: **Instructions: Motion for New Trial: General Statement of Error.** If several instructions are given for a defendant and exception taken to giving a part of them, it is sufficient to allege, generally, in the motion for new trial, that "The court erred in giving erroneous and impoper instructions," without designating specifically which ones are erroneous.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

REVERSED AND REMANDED.

*Fyke & Snider* for appellant.

*Warner, Dean, McLeod & Timmonds* for respondent.

ELLISON, J.—Plaintiff is the widow of William H. Hooper, who died on the 31st of March, 1909. He

166 Mo. App.—14

left what is known as an accident policy, issued to him by the defendant company, for the sum of two thousand dollars, payable to plaintiff. She brought this action alleging the death to have resulted from an accident. The death was not disputed, but defendant denied it was caused by an accident. The judgment in the trial court was for the defendant.

It appears that deceased who, at his death was about fifty-five years of age, was a large man, weighing more than two hundred pounds, and in appearance was robust, strong and healthy. But, as shown by post-mortem examination, he was, in fact, diseased in brain, heart and arteries, and the immediate cause of his death was cerebral hemorrhage.

He was an employee in a large mercantile establishment in Kansas City, and on the evening of the 23rd of March, 1909, about dark, was riding to his home in a street car which passed his house at Twenty-Seventh street and Brooklyn avenue. As the car came near to the corner, and while yet in motion, he got up from his seat, presumably to alight, when he either sank or fell to the floor. Passengers came to his assistance, helped him from the car and carried him into his house and laid him on a sofa. He lingered about a week, when he died on the 31st as stated. The passenger who first went to his assistance spoke to him and he did not answer. He could not walk, but as they got to the door of the car with him he said he could not use one of his legs.

Plaintiff's position is that he accidentally fell in the car, whereby he ruptured a blood vessel in the brain and thereby died. Defendant insists there was no accident, but that deceased was suddenly stricken with apoplexy, whereby he sank to the floor of the car, and thereafter died from natural cause.

Notwithstanding Hooper was fatally diseased in heart and brain, and notwithstanding his death was from apoplexy, yet if he accidentally fell in the car and

ruptured a blood vessel, which caused the apoplectic stroke, his death would be accounted as accidental. For, if a man is so afflicted that he will die from such affliction, within a few hours, yet if by some accidental means his death is caused sooner, it would be a death from accident.

It was therefore an important question of fact whether he accidentally fell in the car, thereby causing a rupture of a blood vessel, whereby apoplexy resulted. There was evidence tending to prove a rough or sunken place in the street railway track at the point where he was seen to arise from his seat in the car, which caused it to "lurch" in passing over, and there was evidence that he fell down, as distinguished from sinking down, that he fell across the aisle striking a seat on the opposite side. His arm was hurt at the elbow and showed a bruised place, which gave him pain. In this condition of the case, there was an offer of proof by plaintiff, as a witness in her own behalf, as a part of the *res gestae,* that after deceased had been carried into his house and laid on the sofa and "within thirty minutes after the occurrence in the car, he complained of his arm hurting him, and stated that he fell in the car and hurt his arm." On defendant's objection, the offer was refused by the court.

The whole of what happens or transpires, that is, the *res gestae,* does not always appear to the eyes of witnesses. Sometimes words spoken by an actor in the transaction during its performance are a part of it and serve to explain it. When an act is immediately accompanied with the words, it is easy to see that it takes both to make up the whole *res gestae.* It is when there is appreciable time between the thing which has happened and the words which are spoken of it, that difficulty has arisen. The thing to avoid is the allowance of a made-up or a colored or highly exaggerated story; for, ordinarily, what a man says in his own favor ought not to be allowed as evidence against his

adversary. With this in view, courts have not always allowed the matter of a short time intervening to prevent what one has said of an occurrence being received in evidence, where the circumstances connect the two and also show fabrication to be highly improbable. In a leading case in this state, which seems not to have been questioned, it is said by WAGNER, J., that: "Where a declaration is made by a deceased person cotemporaneously, or nearly so, with a main event, by whose consequence it is alleged he died, as to the cause of that event, though generally the declarationss must be cotemporaneous with the event, yet where there are any connecting circumstances, they may, even when made some time afterward, form a part of the whole *res gestae.*" [Brownell v. Pacific Ry. Co., 47 Mo. 239.]

In that case the time of Brownell's declaration is not given any more definitely than as "shortly after the accident," and again as "immediately after the accident, when Brownell was restored to consciousness." In State v. Gabriel, 88 Mo. 631, 639, it is said that there are "no limits of time within which the *res gestae* can be arbitrarily confined," and that "they vary in fact with each particlar case." And again, that even though made after the occurrence, "where such statements were plainly not self-serving, but the usual and natural utterances," they are competent. In State v. Martin, 124 Mo. 514, a man was stabbed and cried out, so that a man ran to his relief and then ran a block and a half for a physician, who he found could not come. He then ran back and found a policeman with the wounded man. The policeman, in the presence of this man, then asked him who did it, and was told. The court held the declaration admissible and called attention that the answer was given in the presence of the man who first went to his relief, remarking that "No sensible man would reject such evidence in his own affairs."

Within the limit of these general statements of the law, there is much basis for plaintiff's claim that her offer of proof should have been received. While deceased was not unconscious after the time he was taken to the end of the car, his condition was such while being carried to his house and for some time after he was placed upon the couch, as to appear unreasonable that he could have fabricated a statement as to his fall, with a view to placing himself in position for a claim on this accident policy.

But the application of the law which the Supreme Court has made, to certain facts, we think justified the trial court in rejecting the offer. The case of Leahey v. Cass Ave. & F. G. Ry. Co., 97 Mo. 165, is like the case at bar in material respects. There, a boy eleven years old, either stepped off a moving street car or was frightened off by the driver. He fell under the wheel and was fatally injured. He was carried to a near-by house and laid on a couch and within ten minutes of the accident, in answer to a question as to how he came to be hurt, said the driver kicked him off the car step. Testimony as to this declaration was held inadmissible.

That case practically, is affirmed in Ruschenberg v. Ry. Co., 161 Mo. 70; Barker v. Ry. Co., 126 Mo. 143; State v. Hendricks, 172 Mo. 654, 672; and Redmon v. Ry. Co., 185 Mo. 1.

We regard plaintiff's exception to the two following instructions given for defendant, as well taken, viz.:

"3. The court instructs the jury that if you shall believe from the evidence that Mr. Hooper was stricken with apoplexy while riding in the street car, and that he was so stricken either while sitting in his seat or in an attempt to arise therefrom, and that such apoplexy caused his death, then it is your duty to return a verdict in favor of the defendant.

"4. If you shall believe from the evidence that the death of Mr. Hooper was caused by apoplexy resulting from a diseased condition of his body, it is your duty to return a verdct in favor of the defendant, regardless of all other questions in the case."

These instructions, when applied to the evidence, were practically peremptory to find a verdict for defendant. It was conceded all around that deceased was stricken with apoplexy while riding in a street car, from which he afterwards died. But plaintiff's theory is that either while in the act of arising from his seat, or after he had arisen, he accidentally fell, causing the apoplexy. The peculiar nature of the evidence we think requires, in fairness to plaintiff, that a qualification be made to No. 3, to the effect that he must be found to have been stricken *before* he fell.

So it is clearly necessary to qualify No. 4. Deceased, no doubt, died from apoplexy caused by a diseased condition. That is, he would not have died but for that condition, and therefore, under the terms of the instruction, the verdict must be for defendant. And yet, according to the evidence for plaintiff, if the accident of his falling had not happened, he still would not have been stricken with apoplexy. The effect of the instruction was to cut out plaintiff's theory of her case; especially when there was added the words, "regardless of all other questions in the case."

Defendant challenges plaintiff's right to question those instructions on the ground that there were other instructions also given, to which exception was taken at the time, and these now objected to where not mentioned as errors in the motion for new trial. The motion for new trial does not mention them specially, but does generally. The allegation in the motion is that: "The court erred in giving erroneous and improper instructions to the jury on the part of the defendant." That is a sufficient complaint under the practice in Missouri, which differs in that respect from

many other states: [See Weber v. Cable Ry., 100 Mo. l. c. 205, 206; State v. Noland, 111 Mo. l. c. 493; Chapman v. Eneberg, 95 Mo. App. l. c. 134.]

The judgment will be reversed and the cause remanded. All concur.