No. 22,813.

VIOLET SEARS, *Appellee*, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, *Appellant*.

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE—*Specific Exceptions in Policy as to Liability—Burden of Proof.* Where an accident insurance company seeks to avoid liability because of a specific exception to its general liability under the terms of its policy, and on the ground that the accident and injury were within such exception, the burden of proof rests upon the insurance company to show that the facts of the case fell within the exception clause in the policy which relieved the company from liability.

2. SAME—*Automobile Accident—Ability of Automobile "to Proceed Under Its Own Power."* In an accident insurance policy which provided that the insurer would not be liable for an injury occurring in an automobile accident if the automobile were able to proceed under its own power after the accident, the fair and reasonable interpretation of such exception clause is that the automobile should be able to continue to move in practically the same manner and under the same conditions as existed before the accident, without help or repairs, and with reasonable safety to the occupants and without further damage to the machine itself by its continued operation.

Appeal from Atchison district court; WM. A. JACKSON, judge. Opinion filed March 12, 1921. Affirmed.

*James W. Orr, C. J. Conlon,* and *E. W. Clausen,* all of Atchison, for the appellant.

*T. A. Moxcey,* of Atchison, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an action on a policy of accident insurance.

Plaintiff was the named beneficiary of a policy of insurance issued by defendant to plaintiff's son who was killed in an automobile accident; and the main question involved in this appeal turns on the proper significance to be given to a clause in the policy which provided that the defendant would only be liable if the accident and injuries occurred to the insured—

"While actually riding in any private automobile, provided that the insured shall not then be a hired driver thereof, and the injuries are received in consequence of an accident to the conveyance *which renders it unable to proceed under its own power.*"

The defense was that after the accident the automobile was able to proceed under its own power, and consequently there was no liability.

The evidence showed that in the accident wherein the insured met his death the automobile, a Ford car, was thrown on its side on the highway about four o'clock a. m., before daylight; that the radiator was "all busted," the hose torn loose from the radiator and no water circulation and the radiator leaking, the iron hose connection cracked, the engine and fenders mashed, the wind shield broken, both lights destroyed, and the right rear tire blown up and partly off, part of the oil spilled, the radius rod bent, and the top destroyed. One witness testified:

"The first thing we did was to set it on its wheels. I seen it would be impossible to bring the car home in that condition without making repairs on the radiator connection and cylinder oil in the engine and had to go to Nortonville to get repairs and oil.

"We straightened the radius rod before undertook to drive. There was also an iron hose connection cracked which had to be replaced. We had to put on a new radiator. Whole top broken in and rather than try to repair it I bought a new one. Ground at point of accident showed car plowed ground in the turn over. After roadside repairs it did not hold water but had to be refilled on way to Nortonville. The lights were broken. If one would try to run car without water it would finally stick. The car would be injured to some extent even before it would stick. The purpose in making the minor repairs was to make it possible to bring the car to Nortonville without ruining it. There was less than a quart of oil in it. The Ford has a splash system and when there is only one quart of

oil in it, it will not splash. It would have been dangerous to have tried to run the car without straightening the radius rod. Could not keep it in the road."

Certain expert mechanics testified that a Ford car could still proceed under its own power even after all such damages as above narrated had occurred to it. These experts did not say that a car in that condition could go in its usual manner nor that it could go very far at a time, but that they had known Ford cars to be able to proceed in some fashion under such circumstances. Other experts testified that a car in such a condition could not be operated with safety, and that if one persisted in driving it without straightening the radius rod, without some repairs, and without an additional supply of oil and some provision for water circulation, it would very shortly ruin the motor.

The verdict and judgment were in favor of the plaintiff. Certain special questions were answered:

"Q. 5. Was the automobile which the deceased had been driving, able to proceed, after the accident under its own power? A. No.

"Q. 6. If question No. 5 is answered no, then state what defect or defects therein prevented it so doing? A. Radiator mashed and leaking. Top radiator hose gone and hose connection broken off. Insufficient oil in crank case and water in radiator. Radius rod bent and lights out."

Defendant complains of two instructions given by the trial court:

"The burden of proof is upon the defendant in this case to show, by a preponderance of the evidence, that the automobile in question immediately after the accident was able to proceed under its own power.

"In determining the question as to whether or not after the accident the automobile was able to proceed under its own power, you are instructed that the word 'proceed' used in the manner in which it appears in the policy of insurance, means to continue to move, to go on in practically the same manner and under the same conditions as existed before the accident, and the words, 'under its own power' as used in the policy of insurance mean under its own mechanism, its own strength or capacity, without any additions, help or repairs, and in a manner practically the same as before so far as ability and safety are concerned, not only the safety of the driver or occupants, but the safety of the machine itself. That is, an automobile cannot be said to be proceeding under its own power, to bring it within the terms of the policy, after numerous repairs are made to the vital parts of the machinery and except for which the use of the machine would destroy or ruin it while traveling a very short distance."

Touching the burden of proof, the well-established rule is that when an insurer seeks to avoid liability on the ground that the accident or injury for which compensation is demanded is covered by some specific exception to the general terms of the policy, the burden rests upon the insurer to prove the facts which bring the case within such specified exception.   (1 Cyc. 290; 1 C. J. 497.)

In 14 R. C. L. 1437, it is said:

"Where proof is made of a loss apparently within a policy, the burden is on the insurer to prove that the loss arose from a cause for which it is not liable.   Accordingly while the plaintiff in an action on an accident policy must prove that the death was caused by accidental means, yet where *prima facie* evidence of that fact has been adduced, the defendant must show that the death of the insured resulted from an excepted cause."

(See, also, note and citations to *Preferred Acc. Ins. Co. v. Fielding*, 35 Colo. 19, in 9 Ann. Cas. 919, 921.)

Of course, the material allegations of the petition, the issuance of the policy, the accident and death of the assured, had to be established by plaintiff's evidence; but in the matter of defense, that the accident and death fell within the exception specified in the policy and consequently that the defendant was not liable, the burden of proof was properly imposed on the defendant.

Touching the instruction relating to the condition of the car after the accident, it could not be said that the mere possibility that the car could have been set in motion and that it could in some fashion have proceeded with frequent stops to prevent its overheating, and despite the necessary result of ruining its machinery if it were so driven, would bring the case within the specified exception relieving the insurer from liability.   The exception clause should be fairly interpreted and fairly applied to the facts in evidence; and it was so interpreted and so applied by the trial court in the criticized instruction.

There is no error in the record, and the judgment is affirmed.