No. 33,057

Murel L. Williams, *Appellee*, v. General Accident Fire and Life Assurance Corporation, Limited, of Perth, Scotland, *Appellant*.

(62 P. 2d 856)

Opinion filed December 12, 1936.

*Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, for the appellant.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action on an accident insurance policy. The jury answered special questions and returned a general verdict for plaintiff for $640, on which judgment was rendered. Defendant has appealed.

The principal question presented here is whether under the facts shown and the terms of the policy plaintiff is entitled to recover any sum. The policy was issued August 22, 1930, and kept in force by successive payments of premiums. On June 19, 1934, plaintiff sustained injuries to his left thigh and a sacroiliac sprain in an automobile accident. He was treated for these injuries at a hospital and at home, but was able to return to his work, that of a postal clerk, in August, 1934. For that injury defendant settled with him August 3, 1934. At the time he returned to work he had not fully recovered, and used a cane. His condition continued to improve; he could do his work more easily, and resumed most of his normal activities, among others attending shows and dances. In November, 1934, he went to a doctor because his left leg was not as well as he thought it should be. At that time he knew of no trouble in his back. Every few days, from November 17, 1934, until the latter

part of the next February, the doctor gave him electric diathermic treatments to the back. The diathermy machine used is one which produces a rapidly oscillating current, generating heat. The doctor also had him use a high corset made of heavy canvas, with steel stays, which went around his waist, with straps over the shoulders, the lower portion being a sacroiliac belt, and he was instructed to sleep on a bed without springs. He was in the doctor's office as late as February 28, 1935, but he was not examined or treated on that occasion. At an earlier examination that month the doctor found definite improvement, and noted on his record, "The pain does not radiate into his hip, knee or foot," but he occasionally had some little pain in the left sacroiliac area. The doctor testified that he "probably" had not fully recovered by the time of his second accident, for which recovery was sought in this action. Plaintiff had continued to wear the corset during the daytime until his second accident. Answering a special question, the jury found that at the time of his second accident plaintiff had fully recovered from the injuries sustained in June, 1934.

On March 9, 1935, while getting out of the bathtub, plaintiff slipped and fell in such a way that the "small" of his back struck the faucets of the tub, causing him serious injury. He was taken to a hospital, where an operation was performed upon the vertebrae of the back. He was in the hospital ten days, then confined to his home two and one half months, when he returned to his work at the post office, but was able to work but an hour or two a day, when he would have to lie down, and was paid for the time he worked. Since there is no complaint here of the amount of the verdict if plaintiff is entitled to recover, we shall not further detail his injuries. In making his claim under the policy for that accident he was asked, and answered, among other questions, the following:

"Q. Are you now, or have you ever been, subject to or affected by any other injury or disease, deformity, infirmity or weakness? A. Yes, back weakened in first injury."

The policy sued upon contains this provision:

"This policy insures against—(1) the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means . . ."

Appellant contends that under correct rules of law applied to the evidence in this case the second accident, exclusive of all other causes, did not create the disability for which this action was

brought. Appellant contends the evidence clearly shows plaintiff's back had been weakened by the former accidental injury, that he had been treated for this to within a few days of the second injury, and at that time was still wearing, during the daytime, the sacroiliac belt and corset; and it is argued the answer that he had fully recovered from the first injury when he sustained the second, returned by the jury to a special question, should have been set aside on its motion as being contrary to the evidence.

The legal question raised is the interpretation to be given to the language of the policy, "exclusively of all other causes." On this there are two lines of authorities. One line of authorities, upon which appellant relies, construes the language used in the policy to mean that if the insured had any disease or physical ailment, from any cause, at the time of the accidental injury for which he seeks to recover under the policy, and is unable to show clearly that such disease or ailment was not reflected in some degree in the injurious results of the accident, there can be no recovery under the policy. Under these authorities it is practically impossible for any but the physically sound to recover on an accident policy containing the language used, or tantamount to that used, in the policy here involved, and they place the burden on plaintiff to show that the full effect of the injury following the accident was independent "of any preëxisting disease, or bodily infirmity, as a contributing cause thereof." (See *Crandall v. Continental Casualty Co.*, 179 Ill. App. 330, 339, and *Kerns v. Aetna Life Ins. Co.*, 291 Fed. 289, citing many earlier cases.)

The other line of authorities, recognizing the fact that many persons not physically sound in every respect carry accident insurance policies, take what seems to us a more rational view and construe the language of the policy to mean that if the accident be shown to be the cause of the injury for which the action is brought plaintiff can recover. (*Benefit Ass'n of Ry. Employees v. Armbruster*, 224 Ala. 302, 140 So. 356; *Fidelity & Casualty Co. v. Meyer*, 106 Ark. 91, 152 S. W. 995; *Missouri State Life Ins. Co. v. Barron*, 186 Ark. 46, 52 S. W. 2d 733; *Rinaldi v. Prudential Ins. Co.*, 118 Conn. 419, 172 Atl. 777; *Jones v. Gen. Accident, Fire and Life Assurance Corp., Ltd.*, 118 Fla. 648, 159 So. 805; *Pacific Mutual Life Ins. Co. v. Meldrim*, 24 Ga. App. 487, 101 S. E. 305; *Kokomo Life, Etc., Ins. Co. v. Wolford*, 90 Ind. App. 395, 167 N. E. 156; *Provident Life & Accident Ins. Co. v. Watkins*, 256 Ky. 645, 76 S. W. 2d 889; *Carnelious*

*v. La. Industrial Life Ins. Co.,* 18 La. App. 739, 138 So. 533; *Collins v. Casualty Co. of America,* 224 Mass. 327, 112 N. E. 634; *Kangas v. New York Life Insurance Co.,* 223 Mich. 238, 193 N. W. 867; *U. S. Fid. & Guar. Co. v. Hood,* 124 Miss. 548, 87 So. 115; *Martin v. Travelers' Insurance Co.,* 310 Mo. 411, 247 S. W. 1024; *Smith v. Washington Nat. Ins. Co.* (Mo. App.), 91 S. W. 2d 169; *Moon v. Order of United Commercial Travelers,* 96 Neb. 65, 146 N. W. 1037; *Langeberg v. I. B. M. Accident Assn.,* 57 S. D. 226, 231 N. W. 930; *Provident Life & Acc. Ins. Co. v. Ivy,* 18 Tenn. App. 106, 73 S. W. 2d 706; *Kearney v. Washington National Ins. Co.,* 184 Wash. 579, 52 P. 2d 903; *Life Assur. Soc. v. Gratiot,* 45 Wyo. 1, 14 P. 2d 438.)

This list is far from complete. A much more extended one may be found in Accidental Means, by Cornelius, ch. V, pp. 112 to 159, where the author has classified the cases under stated propositions. Without passing upon the accuracy of this classification, most of the courts look to the evidence to see whether the accident caused the injury for which the action was brought. Many of the cases use the term "proximate cause," as do some of the leading authorities. (6 Couch on Insurance, ch. XXV; Richards on the Law of Insurance, 4th ed., § 393 *et seq.;* 1 C. J. 432, 452; 14 R. C. L. 1265; 6 Cooley's Briefs on Insurance, 2d ed., p. 5297 *et seq.*) Cornelius, p. 147, criticizes the use of the term "proximate cause," but the term has also been thought not to be the best to use in negligence cases. In some of the cases cited these terms are used: "efficient and predominating cause," "independent and sufficient cause," "sole moving and active cause." But, without regard to the characterizing words used, the proper inquiry, and the one usually made, is whether the injury for which suit was brought was caused by the accident. When that is controverted, generally it is held to be a question for the jury.

This case was tried in accord with the line of authorities last above referred to. The court instructed the jury if the accident of March 9, 1935, was the proximate cause of the injuries for which plaintiff sought to recover they should find for plaintiff. This instruction was not erroneous.

Appellant cites *Insurance Co. v. Despain,* 77 Kan. 654, 95 Pac. 580, as holding to the contrary. We do not so read the case, especially in view of the later appeal in the same case (81 Kan. 722, 106 Pac. 1027) which makes it clear neither the litigants nor the court so construed it.

There is not much else in this case. While there is a conflict in

the evidence as to whether plaintiff had fully recovered from the first injury when he sustained the second—and perhaps the weight of the evidence is that he had not—the answer of the jury to that question cannot be said to be wholly without evidence to sustain it, and it was approved by the trial court.

A question is raised as to misconduct of the court because of a remark concerning the evidence made within the hearing of the jury. No point was made of this upon the hearing of the motion for a new trial and it is not available here. In any event, perhaps it would not be held sufficient to require a reversal.

The judgment of the court below is affirmed.