ÆTNA LIFE INS. CO., HARTFORD, CONN., v. CONWAY et al.

No. 1768.

Circuit Court of Appeals, Tenth Circuit.
March 22, 1939.

Carl I. Winsor, of Wichita, Kan. (Paul J. Wall, John E. Boyer, and George J. Hondros, all of Wichita, Kan., on the brief), for appellant.

Max Wyman, of Hutchinson, Kan. (Erskine Wyman, of Hutchinson, Kan., on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The parties will be referred to in the order in which they appeared in the trial court.

On September 7, 1926, defendant issued its policy of insurance on the life of the deceased, Albert Dillon Conway, of Hutchinson, Kansas, of which he continued as a resident until his death. He entered St. Luke's Hospital on August 24, 1936, remaining as a patient until his death on October 10, 1936.

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Rhulin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, as to the construction of contract of insurance in this case the decisions of the Kansas Supreme Court control.

The face amount of said policy was $5,000.00 with double indemnity clause in accidental death. Defendant paid the face amount of $5,000.00, denying liability under said provision, with the contention that the policy excludes from its coverage death resulting "directly or indirectly from disease in any form." The burden rested upon the defendant to show that death resulted directly or indirectly from disease. Sears v. Pacific Mutual Life Ins. Co., 108 Kan. 516, 196 P. 235, and authorities therein cited. To the same effect, see Howard v. Hartford Accident Company, 139 Kan. 403, 32 P.2d 231; Standard Life & Accident Ins. Co. v. Thornton, 6 Cir., 100 F.

582, 49 L.R.A. 116; 1 C.J. 497, Section 288, and cases cited in Note 30.

■ The distinction between accidental means and accidental result is not recognized by the Supreme Court of Kansas. Bukata v. Metropolitan Life Ins. Co., 145 Kan. 858, 67 P.2d 607; Spence v. Equitable Life Assur. Society, 146 Kan. 216, 69 P.2d 713; Continental Casualty Co. v. Colvin, 77 Kan. 561, 95 P. 565; Williams v. General A. F. & L. Assurance Corporation, 144 Kan. 755, 62 P.2d 856.

In Meyer v. Fidelity & Casualty Co. of New York, 96 Iowa 378, 65 N.W. 328, 330, 59 Am.St.Rep. 374, it is said: "It seems to be a well-settled rule in insurance law to attribute an injury or loss to its proximate cause only; and, if this be true, the disorder, whatever it may have been, was but a condition, the fall being the sole and proximate cause of the injury. Lord Bacon's maxim that 'it were infinite for the law to judge the cause of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any farther degree,'—seems to apply to this character of cases." Manufacturers' Accident Ind. Co. v. Dorgan, 6 Cir., 58 F. 945, 22 L.R.A. 620.

See, also, Pacific Mutual Life Insurance Company v. McCombs, 188 Ark. 52, 64 S.W.2d 333; Bohaker v. Travelers' Insurance Company, 215 Mass. 32, 102 N.E. 342, 46 L.R.A.,N.S., 543.

No one was present when the accident occurred. The surrounding circumstances and facts justified a finding and conclusion by the jury that insured fell head foremost out of bed and that his forehead over the right eye struck the floor. One physician as witness for defendant gave as his opinion that encephalitis caused the fall and the blow on the head caused death. Another such witness for defendant testified that encephalitis was the possible cause of the fall; that falling out of bed was not characteristic of encephalitis; that a lot of patients fall out of bed that haven't anything particularly wrong with them; that they turn over and fall out of bed; that the insured might have reached for a glass of water and fallen or have attempted to get up and caught his feet in the covers and fallen.

■ The evidence not conclusively establishing that encephalitis caused the fall, the question was one for the jury. The case appears to have been submitted on the issues under proper instructions. Jaques v. Commercial Travelers, 104 Kan. 612, 180 P. 200; Wideman v. Faivre, 100 Kan. 102, 163 P. 619; O'Brien v. New England Mutual Life Ins. Co., 109 Kan. 138, 197 P. 1100; Ocean Accident & Guarantee Co. v. McClung, 10 Cir., 84 F.2d 844.

As to defendant's motion for the petition to be made more definite and certain, plaintiff after averring matters with reference to issuance of policy, alleges: "That at the time of his death, said Albert Dillon Conway was sixty-one years of age; that his death resulted directly and independently of all other causes from bodily injuries affected solely through external, violent, and accidental means; that such accident was evidenced by a visible contusion or wound at the lateral margin of his right eyebrow;—that his death did not result—directly, or indirectly, from disease in any form."

Prior to the accident he had been in conversation with relatives for approximately two hours and just eaten his meal. There is no evidence that at that time he was dizzy, mentally unbalanced or disoriented.

The provision as to double indemnity is as follows: "If the death of the insured occurs before default in payment of premium and before the first anniversary of the date of this policy which follows the age of seventy years, and such death results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means within ninety days from the occurrence of such accident, and if such accident is evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning and internal injuries revealed by an autopsy) and if such death does not result from suicide, while sane or insane, nor from military or naval service in time of war, nor from aeronautic flight or submarine descent, nor directly or indirectly from disease in any form, then the Company will pay a sum equal to the sum described in this policy as the sum insured in addition thereto."

Defendant's contention was that had said motion been sustained and the petition amended upon its face it would have been demurrable in that it then would have af-

firmatively appeared that the death of the deceased did not "result directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means—," but that death resulted "directly or indirectly from disease * * *."

The motion further was that plaintiff be required to set out the reason why the deceased, Albert Dillon Conway, was confined to St. Luke's Hospital and to give the names of the diseases or maladies from which said deceased was diagnosed to be suffering at the time, and the names of any and all other hospitals in which the deceased had been confined, together with the names of any and all physicians or surgeons who had attended him during his illness, as it had reason to believe that an autopsy examination was made and that the report of autopsy examination revealed causes of death other than that alleged in the petition, same being material in the case, plaintiff should be required to set same out in full.

Defendant was specifically advised that it was sued only on the double indemnity coverage.

Section 60-704, G.S.Kan.1935, provides that the petition shall contain a statement of facts constituting the cause of action in ordinary and concise language without repetition.

The physician, Dr. F. C. Helwig, who made the autopsy, testified as a witness on the part of the defendant, refreshing his memory from the notes made at the time. Dr. Peter Thomas Bohan, who saw the deceased in St. Luke's Hospital in the latter part of August, 1936 when he was under the care of Dr. J. H. Danglade and himself, also testified as a witness for defendant. During the months of August, September, and October, 1936, Dr. Gordon S. Owen resided in St. Luke's Hospital, as an interne, and during the entire period deceased was a patient and until after his death, made the rounds with Dr. Bohan and Dr. Danglade, in visiting the patients, and saw deceased in connection with them. Dr. Owen also testified as a witness for defendant.

There is nothing disclosed in the record tending to show that the deceased had been confined in any other hospital. The action of the court in overruling the motion to make more definite and certain is without error. Nelson v. Schippel, 143

Kan. 546, 56 P.2d 469; Hasty v. Bays, 145 Kan. 463, 66 P.2d 265; Board of Republic County Com'rs v. U. S. F. & G. Co., 96 Kan. 255, 150 P. 590; O'Brien v. New England Mutual Life Ins. Co., 109 Kan. 138, 197 P. 1100; Allen v. Knights and Ladies of Security, 108 Kan. 419, 195 P. 616.

In confining cross-examination of Dr. Danglade to the scope of the direct examination, there was no error. Tucker v. United States, 8 Cir., 5 F.2d 818; 70 C.J. 653.

The record has been examined as to all matters pertaining to instructions and rulings on evidence, no reversible error being disclosed. The case was submitted to the jury under proper instructions and the issues of fact were by the jury determined against the defendant.

The judgment of the lower court is affirmed.