No. 44,837

CLARENCE H. WILLIAMS, *Appellee,* v. BENEFIT TRUST LIFE
INSURANCE COMPANY, *Appellant.*

(434 P. 2d 765)

52

Opinion filed December 9, 1967.

*Charles S. Arthur,* of Manhattan, argued the cause, and *Charles D. Green,* of Manhattan, was with him on the brief for the appellant.

*James L. Rose,* of Topeka, argued the cause, and *George E. McCullough, W. L. Parker, Jr., Robert B. Wareheim,* and *Reginald LaBunker,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an action by an insured, the plaintiff herein, to recover monthly accident benefits under an accident and sickness income policy written by the defendant insurance company. The case was tried to a jury which returned a verdict in favor of the plaintiff and the defendant has appealed.

The case is now making its second appearance before this court. Our decision in the former appeal is reported in *Williams v. Benefit Trust Life Ins. Co.,* 195 Kan. 579, 408 P. 2d 631, to which reference will be made as occasion demands.

Throughout this controversy, the point essentially in issue has been whether plaintiff's disability resulted from accident, in which case he would be entitled to accident benefits under the policy, or whether his injury arose from sickness or disease, in which event sickness benefits only would be due. The difference between the two types of benefits cannot be termed inconsequential, for benefits for total disability arising from accident are payable so long as the disability continues, while benefits for total disability resulting from sickness or disease continue for a period of not to exceed one year.

On the morning of February 5, 1962, while the defendant's policy was in full force and effect, the plaintiff fell down the back steps of his home while starting to work. He landed at the bottom of the stairs on his knees, with his legs and feet doubled back under him. He was not able to rise because of the pain, and called his wife, who helped him to his feet. The plaintiff then went on to work, which was that of a section hand, and continued on the job

for the balance of that day, and the following day as well, although having to favor his knees which were swollen and painful.

On February 7, 1962, a doctor was consulted, who told plaintiff to lie flat on his back for six weeks and then to be on crutches for six months. Later on, at his doctor's suggestion, the plaintiff went to the K. U. Medical Center. At the present time, the plaintiff is unable to perform physical labor and, according to medical testimony, is permanently disabled with respect to his occupation.

A claim for benefits was duly made under the policy, and monthly payments were made for twelve months, at the end of which time the defendant discontinued payments, contending that plaintiff's disability was not due to accident but that it resulted from sickness or disease. The basis for this claim has been that the plaintiff had suffered from an osteoarthritic condition in both knees for many years and that his disability is attributable to that condition within the terms of the policy.

When plaintiff's claim for accident benefits was rejected, he filed the present action. At the first trial a motion for a directed verdict was sustained at the close of the plaintiff's evidence. On appeal, this court held the evidence to be sufficient for submission to the jury and reversed the case for a new trial. (*Williams v. Benefit Trust Life Ins. Co.*, supra.)

The case has now been re-tried, and the jury has found plaintiff entitled to monthly benefits for total disability resulting from accident so long as his disability continues. Hence, the present appeal was taken.

Twelve points are listed by the defendant in this appeal. They may be divided roughly into two categories: (1) that the court erred in its instructions to the jury; and (2) that the verdict is not supported by the evidence.

We find it unnecessary to set forth the policy in full. Certain of its provisions are quoted verbatim in our former opinion to which the reader, should he wish, is welcome to refer. It is sufficient here to say that the policy in general provides for payment of lump sum benefits for accidental death and specific bodily losses and for monthly benefits in case of accident or sickness. Accident benefits of $100 per month are payable so long as injury arising from accident totally disables and prevents the insured from performing every duty of his occupation, while sick benefits of like amount are to be paid while the insured is wholly disabled from engaging in

any work for profit or wages, limited to a period of not more than a year.

The insurance company predicates its defense essentially on the following pertinent policy provisions:

"I. EXCEPTIONS AND REDUCTIONS

"(2) (a) 'Such injury' [from accident], as the term is used in this policy, is defined as bodily injury brought about by an accidental cause and not otherwise. Bodily injury, fatal or non-fatal, not resulting from accidental cause shall be considered only under the sickness provisions of this policy. (b) Any loss, fatal or non-fatal, due wholly or in part to any disease or sickness, or medical or surgical treatment therefor, shall be classified as sickness and not otherwise."

There appears to be a distinct conflict of opinion between the several jurisdictions of this country as to the extent of an insurer's liability under an accident insurance policy containing provisions similar to those quoted above, where the insured has an antecedent disease or sickness. This conflict of authority is set out in 45 C. J. S., Insurance, § 776, p. 813, in these words:

"It has been held that no recovery can be had for a death or disability, on the ground that it results solely from accidental injury, where the injury aggravates the effect of a preëxisting disease or infirmity, or the disease or infirmity aggravates the effect of the injury, and both together cause the death or disability, even though it is thereby caused at a period sooner than it otherwise would have occurred. *On the other hand, it has been held that where the death or disability results from an accidental injury aggravating or rendering active a dormant disease or infirmity, it will be regarded as being caused solely by the injury, so as to render insurer liable therefor, even though the death or disability might have resulted at a later period regardless of the injury, and even though the accident would not have had such an effect on a normal person.*" (Emphasis added.)

This court has recognized the divergence of opinion in *Williams v. General A. F. & L. Assurance Corp.*, 144 Kan. 755, 62 P. 2d 856. In that case action was brought by a policy holder to recover benefits for an injury to his back claimed to be due under an accident policy insuring against ". . . effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means . . ." (p. 756.) The insurance company defended on the ground that the plaintiff's back was weakened from a prior accident from which he had not recovered. In the course of its opinion, which upheld a judgment in plaintiff's favor, the court said:

"The legal question raised is the interpretation to be given to the language of

the policy, 'exclusively of all other causes.' On this there are two lines of authorities. One line of authorities, upon which appellant relies, construes the language used in the policy to mean that if the insured had any disease or physical ailment, from any cause, at the time of the accidental injury for which he seeks to recover under the policy, and is unable to show clearly that such disease or ailment was not reflected in some degree in the injurious results of the accident, there can be no recovery under the policy. Under these authorities it is practically impossible for any but the physically sound to recover on an accident policy containing the language used, or tantamount to that used, in the policy here involved, and they place the burden on the plaintiff to show that the full effect of the injury following the accident was independent 'of any preexisting disease, or bodily infirmity, as a contributing cause thereof.' (Citing cases.)

"The other line of authorities, recognizing the fact that many persons not physically sound in every respect carry accident insurance policies, take what seems to us a more rational view and construe the language of the policy to mean that if the accident be shown to be the cause of the injury for which the action is brought plaintiff can recover." (p. 757.)

In *Johnson v. Farmers and Bankers Life Ins. Co.*, 173 Kan. 8, 244 P. 2d 199, this court took further note of the legal dichotomy, but concluded it was not then necessary to determine which rule should be followed. On page 11 it was said:

"Appellant contends that the proper rule to be applied here is that where an accident aggravates a dormant disease and as a result the insured died at an earlier date than he otherwise would, the accident is the direct and independent cause of the insured's death within the meaning of the double indemnity provision of the insurance policy in this case, and that his evidence made a prima facie case under the rule. Appellee contends that the rule to be applied is that where the insured is afflicted with a disease at the time of the accident, which disease proximately causes or substantially contributes to the death, such death is not within the terms of the policy."

We think the better reasoned rule, and the rule which, in effect, was followed in *Williams v. General A. F. & L. Assurance Corp.*, supra, to be just this: that where an accidental injury aggravates or energizes a dormant disease or physical ailment the accident may be said to have been the proximate cause of the resulting disability within the terms and meaning of the ordinary accident insurance policy.

Such is the rule laid down in *Howe v. National Life Ins. Co.*, 321 Mass. 283, 72 N. E. 2d 425, 170 A. L. R. 1254, where it was said:

". . . A death caused by bodily injuries accidentally sustained would be within the terms of the policy if the accident, by reason of the frailty or general weakness of the insured, a predisposition to a disease, or the presence of a disease then inactive or dormant, resulted in a fatal termination, even if this

result would not have followed if the injured person was in normal health. . . ." (p. 287.)

In *Hooper v. Insurance Co.*, 166 Mo. App. 209, 148 S. W. 116, the Missouri court expressed the principle in this fashion:

"Plaintiff's position is that he accidentally fell in the car, whereby he ruptured a blood vessel in the brain and thereby died. Defendant insists there was no accident, but that deceased was suddenly stricken with apoplexy, whereby he sank to the floor of the car, and thereafter died from natural cause.

"Notwithstanding Hooper was fatally diseased in heart and brain, and notwithstanding his death was from apoplexy, yet if he accidentally fell in the car and ruptured a blood vessel, which caused the apoplectic stroke, his death would be accounted as accidental. For, if a man is so afflicted that he will die from such affliction, within a few hours, yet if by some accidental means his death is caused sooner, it would be a death from accident." (pp. 210-211.)

For additional cases in which the rule has been followed and applied, see, among others, *Clay County Cotton Co. v. Home Life Ins. Co.*, 113 F. 2d 856; *Kievit v. Loyal Protect. Life Ins. Co.*, 34 N. J. 475, 170 A. 2d 22; *Lawrence v. Providential Life Ins. Co.*, 238 Ark. 981, 385 S. W. 2d 936; *Emergency Aid Insurance Co. v. Dobbs*, 263 Ala. 594, 83 So. 2d 335; *U. S. Fidelity & Guaranty Co. v. Smith*, 249 Miss. 873, 164 So. 2d 462.

It is clear that the trial court submitted this case to the jury on the theory we have just discussed. Instructions eighteen and nineteen were patterned closely after the rule we have approved and we believe those instructions correctly set forth the law applicable to the facts of this case. The defendant's objection to the two instructions is without merit.

Eleven special questions were submitted to the jury for answer, and these were returned into court with the verdict. Summarizing its answers, the jury found that on February 5, 1962, the plaintiff sustained injuries resulting from an accidental fall which has disabled him from pursuing his occupation as a section laborer and from performing every duty pertaining thereto; that plaintiff had a preexisting arthritic condition which was dormant; that plaintiff's disability was the proximate result of the accidental fall which aggravated his preexisting arthritis; that plaintiff's loss resulted from accidental injury directly and independently of other causes and not from disease or sickness in whole or in part; and that the defendant was liable under the accident provisions of its policy.

If the answers returned by the jury find support in the evidence, both the answers and the verdict rendered consonant therewith,

must be sustained. In reviewing the evidence to determine whether it was sufficient to sustain the jury's findings and verdict we are limited by the venerable rule that our function is not to weigh conflicting evidence but simply to ascertain if there is any substantial competent evidence which, with the inferences reasonably to be drawn therefrom, sustains the jury's action. (See 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, §§ 495-496; 2 West's Kansas Digest, Appeal & Error, §§ 1001-1002.)

When the evidence is considered in the light of the foregoing rule, we think the jury's answers to the special questions, as well as the verdict itself, can not be said to be wholly unsupported by evidence. The plaintiff testified that on the morning in question he slipped and fell down five steps, landing on his knees which became swollen and sore; that he was forced to quit work after two pain-filled days and has been unable to work ever since; that prior to his fall he did the same work as any other section laborer and that he had not missed any work because of osteoarthritis in his knees; that he could lift heavy objects and walk up and down stairs before his accident, but is unable to do so now. The plaintiff's testimony as to the performance of his work prior to the accident was corroborated by his foreman.

The plaintiff's attending physician, who was the sole medical witness, testified that in his opinion the accident of February 5, 1962, was the precipitating cause of plaintiff's disability, even though he felt that eventually the plaintiff would have been disabled from osteoarthritis alone. We think it significant, however, that the doctor was unable to place any time limit on such an eventuality or to estimate how long in the future it would have occurred.

It is strenuously argued by the defendant that it was not the fall which aggravated the disease, but that it was the osteoarthritis which precipitated the fall. This contention is bottomed on plaintiff's statement, contained in his claim for benefits, that he was going down the back steps at home when his knee gave way and he fell down the steps and had been totally disabled since. However, at the trial, the plaintiff testified he *slipped* and fell down the steps. It was for the jury to determine how the fall occurred and to resolve whatever conflict there may have been as to its cause.

The defendant insists there is no evidence that plaintiff's osteoarthritis was dormant and the company also objects to the court's instructions defining dormancy. We think neither contention well

founded. Although plaintiff had injured his right knee some twenty-seven years previously, he testified it had not bothered him too much, that he had scarcely complained of it, and that he had never filed any claims for knee trouble. Furthermore, there was no history whatever of traumatic damage to the left knee. Prior to the accident the plaintiff could and did perform heavy manual labor, but now he is unable to stand for more than five or ten minutes without pain and is barely able to walk up and down stairs even with the aid of a cane and a railing.

In its instruction number twenty-four, which was given in response to a request from the jury after some three hours of deliberation, the court charged the jury as follows:

"You are instructed that the word 'dormant' as used in these instructions, and in the special questions, means a state of rest, inactivity, or inoperative to the extent that the plaintiff was not disabled from pursuing his regular occupation. The word 'active' means in a state of action, in active progress, or motion to the extent that the plaintiff was disabled from pursuing his regular occupation."

Synonyms for the adjective "dormant" are "inactive," "resting," "passive," "static," "quiescent," while its antonym, "active," has the contrary connotation: "Lively," "busy," "energetic," "effective," "operative." (See Webster's Third New International Dictionary, Unabridged, and Roget's International Thesaurus, New Edition.) The definition given by the court accords substantially with these authorities.

But the defendant maintains that the instruction is tantamount to saying that if one is able to work while diseased, his disease is dormant. It may be that under different circumstances, or under different policy provisions, the addition of the phrase "to the extent that plaintiff was (or was not) disabled from pursuing his regular occupation" would not have been proper. However, under the facts of this case we cannot say the instruction was inappropriate or erroneous. The policy itself conditions the payment of monthly accident benefits to cases where the injury continuously and totally disables the insured and *prevents him from performing every duty of his occupation.* Moreover, the evidence reveals that up to the time of his fall the plaintiff had been performing all the usual functions of a railroad section worker, while thereafter both knees were so injured that he could not continue work and cannot now stand without pain, or walk without artificial aids. Crippling disability came to plaintiff in one awesome moment, leaving him wholly

unable to perform the work which, a moment before, he was capable of performing.

Complaint is made that instruction twenty-four was given after the jury had retired to deliberate, thus depriving defense counsel of the chance to comment thereon in final argument. This complaint is without merit. K. S. A. 60-248(e) specifically sanctions such a practice where the instruction is read to the jury in the presence of or after notice to the parties or their counsel. Here, defense counsel was not only present when the instruction was read to the jury but was accorded an opportunity to discuss and object to the instruction before it was given.

Objections to two other instructions must be noted briefly. In instruction nine the court advised the jury that the burden of proof was upon the defendant to establish that plaintiff's disability was caused wholly or in part by disease or sickness. This was not error. It is the rule in this state that where an insurer seeks to avoid liability under an exception contained in a policy of insurance, the burden is upon him to establish the facts which bring the case within the exception. (*Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571; *Leiker v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 630, 634, 396 P. 2d 264.)

The twelfth instruction given by the court reads as follows:

"You are instructed that the term 'accident' is defined as an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often, but not necessarily, accompanied by a manifestation of force."

This definition accords with that given many times in workmen's compensation cases. (See *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 303 P. 2d 197.) The definition was also approved in *Spence v. Equitable Life Assurance Soc.*, 146 Kan. 216, 69 P. 2d 713, a case involving payment under a double indemnity provision of a life insurance policy. We see nothing to criticize in the instruction as given.

This is essentially a fact case which the jury by its answers to special questions and by its verdict has resolved in the plaintiff's favor, despite the fact there was evidence which would have supported a contrary conclusion. We find nothing in the record which can be said to have constituted error. The judgment is affirmed.