**Maye CRUMM, Guardian and Conservator of Neva Blanche Widener, Plaintiff,**

v.

**ALLSTATE LIFE INSURANCE COMPANY, United of Omaha Life Insurance Company; and Montgomery Ward Life Insurance Company, Defendants.**

**Civil Action No. 97–1117–WEB.**

United States District Court,
D. Kansas.

April 23, 1998.

Jack R. Shelton, Wichita, KS, for Maye Crumm.

William A. Wells, Young, Bogle, McCausland, Wells & Clark, Wichita, KS, for Allstate Life Insurance Co.

Corlin J. Pratt, Grace, Unruh & Pratt, L.C., Wichita, KS, for Montgomery Ward Life Insurance Co.

### MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

This is an action against insurance companies that issued accidental death insurance policies on the life of Robert Widener, deceased. The plaintiff, Maye Crumm, filed this action on behalf of Mr. Widener's widow, Neva Blanche Widener, who died while this action was pending. Now before the court are defendants' joint motion for summary judgment and defendants' joint motion to strike.

Defendants admit that at the time of death, four separate policies covering Mr. Widener's "accidental death" were in force—three policies issued by defendant Allstate in the amounts of $10,000, $60,000, and $45,000; and one policy issued by defendant Montgomery Ward Life Insurance Company in the amount of $12,500. The pertinent terms of all of these policies provided that decedent's death must have resulted "directly and independently of all other causes" from "bodily injury caused by accident while the insurance was in force" and "within 365 days after the date of the accident."

Plaintiff's insured was found dead in his home, his body in a badly decomposed state. It is plaintiff's contention that the insured's death was an accidental death because the evidence would establish that he fell when he became entangled in an electrical cord and thereafter, because of his mobility problems, he was unable to rise again. Plaintiff's claims against all policies were denied on the grounds that Mr. Widener's death was not an "accidental death" under the terms of the applicable policies.

Defendants' motion for summary judgment is based upon the theory that plaintiff has no evidence to support her theory of accidental death. Under Rule 56(c) of the Federal Rules of Civil Procedure, which governs procedure in this court, a summary judgment on plaintiff's claim may not be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits "show that there is no genuine issue as to any material fact," and that defendants are entitled to judgment as a matter of law. In arriving at a decision on such motion, all evidence is to be considered in the light most favorable to the plaintiff. *Swanson v. Guthrie Independent School District No. I–L,* 135 F.3d 694 (10th Cir.1998) Following a review of the pleadings and other materials in the record, the court determines that the motion for summary judgment should be denied.

The depositions, official reports and affidavits on file reveal that on July 18, 1995, the deceased, then 81 years old, was discovered in his home "in an advanced state of decomposition." He was last seen alive by neighbors on July 13. A report of a medical investigator called to the scene provides the following information (Dkt. 46, Defendants' Exhibit 3, Report of Death, page 2):

... The decedent was found in a prone position in the bedroom with his head connecting with a corner of a makeup table. In conjunction with WPD Crime Lab Investigators, it was determined that there was no indication of suspicious or criminal activities. No current medications for the

decedent were found by this investigator. A local pharmacy reported... that Dr. T. Summerhouse was listed as the decedent's prescribing physician. ...

The Certificate of Death executed by Dr. Nashelsky, the physician who performed the autopsy, listed "Immediate cause of death" as "Pending further studies," and the manner of death as "pending investigation."

At the time the remains of the decedent were received for autopsy, it was observed that a segment of electrical cord attached to electrical blanket controls partially encircled the upper right leg of the decedent. The body was badly decomposed, with "marked shrinkage or absence" of all internal organs, including the brain and heart. There was extensive external tissue damage, exposing bones of the face, back of head, the arms and left thigh. The medical examiner who conducted the autopsy summarized his opinion in this manner: (Dkt. 46, Defendants' Ex. 4, p. 5, Autopsy Report)

\* \* \* \* \* \*

The autopsy revealed an adult male in an advanced state of decomposition with absence of most internal viscera. There was severe atherosclerosis of the thoracoabdominal aorta, however the heart was absent due to decomposition. There was thickening of the rib cage from front to back ("barrel chest") suggesting chronic lung disease... Evidence of trauma was not identified.

In the absence of compelling autopsy or investigative information, *the cause and manner of death are classified as undetermined.* (Emphasis supplied)

Affidavits and depositions presented on behalf of plaintiff provide evidence that the decedent was frail, did not eat properly, that he was unsteady on his feet and would often fall and have difficulty rising without help.

Evidence of the deceased's medical history appears in the deposition of Terry L. Summerhouse, D.O. (Dkt.46, Exh. 7) The deceased had osteoarthritis of the spine, which caused him to be "stiff and inflexible," and to have a hard time getting up and down. Dr. Summerhouse treated this spinal condition through manipulative therapy over an eight-year period from 1984 to December, 1992, on a monthly basis, sometimes treating the deceased several times during a month. On occasion Darvon or Motrin was prescribed for pain relief, "although 90 percent of the time it would appear that [he] was without medication." It was also noted that the decedent had a limp and was without "full use of his right leg." (Summerhouse deposition, pp. 10–11). After December, 1992, the deceased discontinued treatments by Dr. Summerhouse, apparently because Mr. Widener had a dispute with another patient in the office.

An affidavit and the deposition of plaintiff's witness, Diane Gloege, an R.N., appear in the record. (Dkt. 46, Defendants' Exhibits 8, 9). Ms. Gloege is the Director of Health Care Services for Interim Healthcare of Wichita, Inc., a business certified by Medicare and Medicaid which provides home health care, and supplemental staffing for hospitals, nursing homes, doctors' offices and medical clinics. After reviewing all of the medical evidence, the police and autopsy reports, and photographs taken at the scene, it is Ms. Gloege's opinion, based upon her experience with patients whose condition was similar to Mr. Widener, that it was more likely than not he arose from his bed with an electrical cord wrapped around his leg, causing him to fall, and he was unable to rise because of his medical condition.

While defendants contend that Ms. Gloege should not be allowed to testify as an expert on "the cause of death," plaintiff suggests that she will not give an opinion as to the medical cause of death, but that she is qualified to provide an expert opinion on the functional capabilities of someone with the decedent's medical condition. Defendants make similar contentions with reference to the testimony of Dr. Summerhouse as to the decedent's "cause of death." In this respect, the court finds merit in plaintiff's claim that there is no requirement in the policies, or under Kansas law, that the "medical cause of death" be determined since the only requirement is a finding that the death of the insured occurred "by accident."

In *Broyles v. Order of United Commercial Travelers,* 155 Kan. 74, 122 P.2d 763 (1942), where no medical person was able to state the cause of death, the court held that a jury

should determine whether death was by accident even in the absence of such medical opinion as to the immediate medical cause of death.

In *Aetna Life Ins. Co., Hartford, Conn. v. Conway*, 102 F.2d 743 (10th Cir.1939), the deceased fell from his hospital bed. No one was present when the accident occurred. Applying Kansas law, the court determined that the "surrounding circumstances and facts justified a finding and conclusion by the jury that insured fell head foremost out of bed and that his forehead over the right eye struck the floor." (102 F.2d at 744) While defendant's witnesses testified that encephalitis caused the fall and the blow on the head caused death, and another defense witness testified that encephalitis was the possible cause of the fall, although falling out of bed was not characteristic of encephalitis, the court held that since the evidence did not conclusively establish that encephalitis caused the fall, "the question was one for the jury." [1] *Ibid.*

In *Williams v. Benefit Trust Life Insurance Company*, 195 Kan. 579, 408 P.2d 631 (Kan.1965), the issue centered upon a disability policy, and whether the insured's disability was a consequence of "sickness," or whether an "accident" was the cause of the disability.[2] It appears that plaintiff, aged 57, was afflicted with osteoarthritis and became disabled when he slipped on the steps of his home and fell injuring both knees. A directed verdict for the insurer was reversed on appeal upon the ground that plaintiff had made a submissible case for jury determination. Upon remand, the case was tried to a

jury which returned a verdict in favor of the plaintiff, and that verdict was affirmed. *Williams v. Benefit Trust Life Insurance Company*, 200 Kan. 51, 434 P.2d 765 (Kan. 1967). In so doing, the Kansas court determined that "where an accidental injury aggravates or energizes a dormant disease or physical ailment the accident may be said to have been the proximate cause of the resulting disability within the terms and meaning of the ordinary accident insurance policy." 434 P.2d at 769.[3] The court also approved the following instruction defining the term "accident":

> "You are instructed that the term 'accident' is defined as an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often, but not necessarily, accompanied by a manifestation of force." 434 P.2d at 771.

In *Boring v. Haynes*, 209 Kan. 413, 496 P.2d 1385 (1972), summary judgment in favor of defendant was reversed. There the body of the deceased did not show any visible marks of trauma or injury, but the court held that this was not a "requisite to a showing of accidental bodily injury ... it is not essential that the disorder be of such character as to present external or visible signs of its existence". In *Boring*, the deceased had a history of heart disease, but 12 days before he died, his heart consultant had seen him, reporting that he had no cardiac symptoms, and was doing well. His family doctor had cleared him to return to work on July 24, 1967.

---

1. In this case, the policy required that an accident must be "evidenced by a visible contusion or wound on the exterior of the body" (with some exceptions noted such as drowning or internal injury established by autopsy).

2. If the disability was caused by sickness, then benefits would be paid for a maximum of 12 months, while if an accident was the cause of disability, the insured would be entitled to lifetime benefits.

3. In this second *Williams* opinion, the Kansas court also cited with approval *Hooper v. Standard Life & Accident Insurance Co.*, 166 Mo.App. 209, 148 S.W. 116, where plaintiff claimed that the deceased accidentally fell in the car, rupturing a blood vessel in the brain, thereby causing death.

Defendant there asserted that there was no accident, but that the deceased was suddenly stricken with apoplexy, that he sank to the floor of the car and thereafter died from natural causes.

In rejecting this defense, the Missouri court stated that:

> Notwithstanding Hooper was fatally diseased in heart and brain, and notwithstanding his death was from apoplexy, yet if he accidentally fell in the car and ruptured a blood vessel, which caused the apoplectic stroke, his death would be accounted as accidental. For, if a man is so afflicted that he will die from such affliction, within a few hours, yet if by some accidental means, his death is caused sooner, it would be a death from accident. (pp. 210, 211, 148 S.W. pp. 116, 117). [quoted at p. 434 P.2d at p. 769]

On July 17, the decedent's vehicle was struck in the rear; he got out of his auto to talk to passengers in the other car and returned to his vehicle to check the damage. At that time, he suddenly collapsed and was found to be dead on arrival at the hospital. The death certificate indicated that the immediate cause of death was myocardial infarction due to coronary arteriosclerosis. Plaintiff's evidence was to the effect that the emotional or physical stress of the accident precipitated his existing physical condition, resulting in his death. Citing the two *Williams* cases discussed above, the court held that when emotional stress arising from an auto accident is superimposed on an existing diseased coronary arteries and heart so as to cause death, the disease being in a dormant condition, recovery may be had under the usual provisions of a policy insuring against accidental death.[4]

Under the evidence discussed above, including photos taken at the death scene, one which clearly shows an electrical cord attached to a blanket wrapped around the leg of the deceased, the court believes that a classic case for jury determination has been presented, and the defendants' motion for summary judgment must be denied.

Defendants' motion to strike from the pretrial order certain language pertaining to plaintiff's contentions will also be denied. Plaintiff is entitled to present her claim according to her construction of the issues involved in the case, and the ultimate merit of such issues will be submitted to jury determination under appropriate instructions from the court.

Accordingly,

IT IS ORDERED that defendants' motion for summary judgment be, and it is hereby DENIED;

IT IS ORDERED that defendants' motion to strike certain issues from the pretrial order be, and it is hereby DENIED; and

IT IS FURTHER ORDERED that this case be remanded to Magistrate Judge Reid for a settlement conference.

---

**4.** In connection with this holding, the *Boring* court also considered *Williams v. General Accident, Fire & Life Assurance Corp.*, 144 Kan. 755, 62 P.2d 856 (Kan.1936), a disability case in which the policy paid accident benefits only if the disability resulted "directly and exclusively of all other causes, from bodily injury sustained... solely through external, violent and accident means." 62 P.2d at p. 857.

In rejecting the insurer's argument that this language barred recovery, the Kansas court stated:

The legal question raised is the interpretation to be given to the language of the policy, "exclusively of all other causes." On this there are two lines of authorities. One... construes the language ... to mean that if the insured had any disease or physical ailment from any cause, at the time of the accidental injury... and is unable to show clearly that such disease or ailment was not reflected in some degree in the injurious results of the accident, then there can be no recovery... *Under these authorities it is practically impossible for any but the physically sound to recover on an accident policy containing the language used...*

\* \* \* \* \* \*

The other line of authorities, *recognizing the fact that many persons not physically sound in every respect carry accident insurance policies,* take what seems to us a more rational view and construe the language of the policy to mean that, if the accident be shown to be the cause of the injury for which the action is brought plaintiff can recover. [62 P.2d at p. 857]

According to defendants' Exhibits A, B, and C filed with the motion for summary judgment, Mr. Widener purchased his first accident policy from Allstate in 1987 at age 73, the second in December, 1993, and a third in April, 1994, at age 80.