No. 25,394.

METTA M. DILDINE, Widow of Ed E. Dildine, for Herself and the Heirs at Law of said Ed E. Dildine, *Appellee*, v. JOE J. FLYNN, *Appellant*.

SYLLABUS BY THE COURT.

WRONGFUL DEATH—*Automobile Driven at Excessive Speed—Wanton Negligence of Driver.* One who drives a large, high-power automobile along the streets of a city at such a speed that after applying his brakes for forty to sixty feet he is then traveling at forty miles per hour has such a reckless disregard for the rights and safety of others that his conduct is properly described as wanton.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed July 5, 1924. Affirmed.

*W. D. Atkinson,* of Parsons, for the appellant.
*C. E. Pile,* of Parsons, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by a widow, on behalf of herself and other dependents, for damages for the wrongful death of her husband. The jury answered special questions and returned a general verdict for plaintiff. The defendant has appealed from an order overruling his motion for a judgment on the special findings notwithstanding the general verdict.

The evidence and instructions are not before us. · The petition alleges, in substance, the following facts material to be considered:

The deceased, Ed E. Dildine, was employed in the Katy shops at Parsons and quit work each day at twelve o'clock midnight. He and his son Ralph, twenty-three years of age, were joint owners of a four-passenger Overland automobile. On the night in question Ralph drove the car to the shop to take his father home after his day's work. They left the shops about 12:10 and were driving east along Crawford avenue to their home on that street. At the intersection of Crawford and Central avenues their car was struck near the right-hind wheel by the right front wheel and fender of a seven-passenger Cadillac automobile which was being driven north on Central avenue by the defendant. Their car was overturned; Ed E. Dildine was thrown to the pavement and received injuries which resulted in his death in about two hours. It is alleged that at the time of the collision Ralph was driving the Overland at about ten miles per hour and that defendant was driving the Cadillac at about forty miles per hour. It is further alleged that the intersection was well lighted and unobstructed by other travel or otherwise; that the front and rear lights on the Overland were burning, and that from a point fifty feet west of the place where the collision occurred the Overland car as it traveled eastward was in plain view of defendant. It is alleged that the collision was caused by the wanton, reckless and willful negligence of defendant, in that he drove into and across the intersection at a speed "greater than twelve (12) miles per hour, and at a rate of speed that was greater than was reasonable and proper and without any regard for the traffic and use of the highway at the time and place, and at such a rate of speed as to endanger the life and limb of persons using said intersection, and particularly said deceased"; and in failing to discover the Overland automobile while it was traveling eastward over the intersection, and in failing to stop the Cadillac before striking the Overland, and in failing to avoid the Overland by turning the Cadillac sufficiently to the left. It is alleged that on account of the situation of the cars when they entered the intersection the Overland automobile and its passengers had the right of way. The city ordinance attached provides that drivers of motor vehicles shall not exceed a speed of twelve miles per hour, and on approaching an intersection shall reduce the speed to six miles per hour, and when two cars approach the intersection on different streets the one on the right has the right of way.

The answer pleaded contributory negligence; that had the driver

of the Overland car reduced his speed on approaching the intersection as required by the city ordinance set out by plaintiff, or had the driver or deceased looked for vehicles approaching from the right, they could have seen defendant and stopped or avoided the collision; that deceased was part owner with the driver of the automobile in which he was riding; that the same was then being driven for the use and benefit of deceased, and that the driver was the agent of deceased in driving the automobile over the intersection at the time of the collision. The reply was not verified. The jury returned a general verdict for $1,000 for plaintiff and answered special questions as follows:

"Q. 1. Was there any obstruction to the view of the occupants of the Dildine car south on Central avenue, as said car passed onto and crossed over the intersection of Crawford and Central avenues? A. No.

"Q. 2. Did the driver of the Dildine car, as the car passed onto the intersection of Crawford and Central avenues, see the light of the approaching Flynn car? A. Yes.

"Q. 3. Did the driver of the Dildine car slacken the speed of said car as it passed onto and across over the intersection of Crawford and Central avenues? A. No.

"Q. 4. Did the driver of the Dildine car, in crossing over the intersection, when he saw the Flynn car aproaching, increase the speed of the car he was driving to cross over the intersection ahead of the approaching Flynn car? A. He attempted to.

"Q. 5. Did the driver of the Dildine car, at or about the time of the collision, turn the front wheels of the car northward from the east course the car was then running? A. Don't know.

"Q. 6. Did defendant look for approaching automobiles on Crawford avenue as the car he was driving approached the intersection of Crawford and Central avenues? A. Yes.

"Q. 7. Did defendant, to avoid the collision, apply the brakes on the Flynn car as soon as he saw the Dildine car? A. Yes.

"Q. 8. If you answer the preceding question in the affirmative, how far was the Flynn car south of the point of collision when the brakes were applied? A. Forty to sixty.

"Q. 9. Did defendant, prior to the collision, turn the front wheels of the Flynn car west of north to avoid the collision? A. Turned them about time of collision.

"Q. 10. If your verdict is for plaintiff, state specifically defendant's act or acts of negligence. A. Speed."

Defendant moved for judgment in his favor upon the answers to special questions, notwithstanding the general verdict. The court overruled this motion and rendered judgment for plaintiff. The sole question before us is, Do the answers to the special questions require

that judgment be entered for defendant? The rule to be applied is, of course, that the answers to special questions must be construed so as to harmonize with each other and with the general verdict if that is reasonably possible. If that cannot be done the special findings stand and the general verdict must be set aside.

Appellant contends the answers to questions Nos. 1 to 5. are findings of negligence on the part of the driver of the Overland car. Since that car was then being driven for the use and benefit of deceased, who was half owner thereof, and the driver was at the time the agent of deceased, the negligence of the driver is imputable to the deceased. Since the negligence of the deceased contributed to the collision and injury, there can be no recovery by the plaintiff in this case unless the negligence of defendant was of such a character that it can be said to be wanton. A person charged with wanton negligence ordinarily cannot be found guilty thereof if after discovering the danger he uses all reasonable means within his power to avert the catastrophe. Special findings 6, 7, 8 and 9 show that defendant saw the deceased and his driver before he reached the intersection; that he applied the brakes to the car as soon as he saw them, forty to sixty (feet) before reaching the point of collision, and that about the time of the collision he turned his car to the left in an effort to avoid the collision. The record does not disclose that he could have done anything more after seeing the Overland car than he did do to avoid the collision, hence the collision cannot be said to be wanton and willful on his part unless the answer to the tenth question satisfies that requirement in the face of the other findings.

Appellant lays much stress upon the provision of the city ordinance that when two cars approach an intersection on different streets the car on the right has the right of way, and argues that by virtue of the city ordinance the defendant here had the right of way. This rule does not require one entering an intersection to stop and wait for a car approaching the intersection on his right and which is more than 200 feet away. He might reasonably suppose he could cross the intersection before the car on his right would travel that distance. From the allegations of the petition, which we must assume were established by the evidence, the Cadillac was traveling more than four times as fast as the Overland. It is alleged that the Overland, traveling at ten miles per hour, had passed over fifty feet of the intersection when it was struck, and "at the instant of the collision"

the Cadillac was traveling forty miles per hour. By the jury's find-ing, the brakes on the Cadillac were applied forty to sixty feet before reaching the point of collision. Hence the Cadillac must have been more than 200 feet away from the intersection when the Overland started to cross. In this situation the Overland would have the right of way as alleged in the petition, and the answers to the first five questions returned by the jury do not show contributory negligence on the part of the driver of the Overland car so as to bar a recovery in this action.

Appellant contends that the answer "speed" to the tenth question must be construed as ordinary or reasonable speed. We do not so understand it. This answer must be construed, if it can be, in harmony with other special findings, in harmony with the allegations of the petition, since the verdict was for plaintiff and the evidence is not before us, and in harmony with the general verdict. So con-strued, the word "speed" used as the answer to question 10 must be held to be such speed as after applying the brakes for a distance of forty to sixty [feet]—in the argument it was said the car skidded for that distance—the Cadillac was "at the instant of the collision" traveling at forty miles per hour as alleged in the petition, and that such speed, under instructions which are not complained of, amounted to wantonness which may be said necessarily to inhere in the general verdict. So construed, the findings are harmonious with each other and the general verdict. Hence the general verdict must stand, even assuming as correct the position taken by ap-pellant that it was necessary for plaintiff to show wantonness on the part of defendant, for wantonness may consist in a reckless dis-regard of the rights and safety of others. We do not hesitate to hold that for one to drive an automobile through the streets of a city at such speed that after the brakes have been applied for a distance of forty to sixty feet the automobile is then traveling at the rate of forty miles per hour is such a reckless disregard for the rights and safety of others as to amount to wantonness.

The judgment of the court below is affirmed.