No. 36,723

WILLETTA REVELL, *Appellee*, v. TOM BENNETT, *Appellant*.

(176 P. 2d 538)

Opinion filed January 25, 1947.

*John A. Etling,* of Kinsley, argued the cause, and *W. N. Beezley,* of Kinsley, and *Wayne Lamoreux,* of Great Bend, were with him on the briefs for the appellant.

*Tudor W. Hampton* and *Melvin O. Nuss,* both of Great Bend, argued the cause, and *S. R. Blackburn, W. J. Glass* and *Don C. Foss,* all of Great Bend, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The plaintiff prevailed in an action to recover damages for personal injuries resulting from a collision of motor vehicles

in an intersection of highways. The defendant appeals from orders overruling his (1) demurrer to plaintiff's evidence; (2) motion for a directed verdict; and (3) his motion for a new trial.

It is conceded the principal question presented is whether appellee was guilty of contributory negligence. Appellant concedes the burden of establishing such negligence ordinarily rests on the defendant but he relies upon the equally well-established doctrine that if a plaintiff's own evidence shows him to be guilty of contributory negligence, as a matter of law, a defendant may take advantage thereof by demurrer, citing *Houdashelt v. State Highway Comm.,* 137 Kan. 485, 21 P. 2d 343; *Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470; *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851.

The question therefore is, did appellee's own evidence actually convict her of contributory negligence as a matter of law? She was the only eyewitness to testify concerning the collision. The pertinent portion of her direct examination, in substance, disclosed:

She was thirty-four years of age and the owner of a 1941 Mercury sedan coupe automobile; she was operating this car on the date of the collision, July 11, 1942; she had driven a car twelve years; Cleo Revell, who was her husband at that time, was asleep in the back seat; she was traveling west on U. S. highway 50 south, a paved road, at a speed of probably sixty to sixty-five miles per hour; after reaching a point approximately six miles west of Dodge City she observed two trucks on a dirt road approaching the paved road from the north; it was approximately 4:45 p. m., the day was clear and the paved highway was dry and in good condition; it was probably twenty-four feet wide, level, and she could see a long way ahead; the trucks seemed to be coming down a slight incline; she first saw them when she was approximately one-half to three-quarters of a mile east of the intersection; the trucks were then approximately one-fourth mile north of the intersection; the first truck stopped at the stop-sign before entering the intersection; the stop-sign was located north of the main highway; when she saw the first truck stop it made her more or less confident the second one would also stop; after stopping for approximately one second the first truck passed through the intersection; she was then about a quarter of a mile east of the intersection; the second truck was fairly close behind the first truck; the second truck did not stop at the stop-sign; when she first observed the second truck was not stopping at the stop-sign she was from fifty to seventy-five feet east of the inter-

section; she lifted her foot from the accelerator; her first thought was to apply the brakes and she thought she did so momentarily; she thought if she applied the brakes the collision would be certain; she then thought she could avoid the collision by pulling to the left and by not applying the brakes; the front end of the truck collided with the right front part of her car; the collision occurred in the south half of the intersection; C. C. Neill was driving the truck which struck her car.

Much of the cross-examination was a repetition of her testimony on direct examination. Other pertinent portions of her cross-examination, in substance, were:

She was not a very good judge of distance but thought it would have required about 600 feet to stop entirely at the speed she was traveling; she was probably nearer a half mile from the intersection when she first observed the trucks; her estimate was the trucks were traveling about twenty-five miles an hour; the second truck seemed to be traveling faster than the first one; she judged that when she first saw the trucks they were something like twenty-five to fifty feet apart; the second truck got closer to the first truck when that truck stopped at the intersection; she was rather sure she was more than a half mile east of the intersection when the first truck stopped at the stop-sign; in attempting to avoid the collision she turned onto the south part of the intersection; the collision occurred a little to the west of the center of the north and south road; she tried to do what was best under the circumstances; the truck was traveling with the same speed at which it approached the intersection; the first truck stopped about twenty-five feet north of the highway; she was probably nearer three-fourths of a mile east of the intersection when she first observed the trucks coming from the north; she was probably fifty to seventy-five feet east of the intersection when she observed the second truck was not stopping; the first truck had gotten safely across the intersection traveling south; she could not state definitely the distance it had traveled south by the time she collided with the second truck; her attention was on the second truck.

It is, of course, elementary that in testing evidence on demurrer courts consider all of the evidence as true, consider the evidence favorable to, and disregard that unfavorable to, the party adducing it. They do not weigh any part of the evidence that is contradictory or any differences between portions thereof adduced on direct and cross-examination. When so considered, if there is any evidence

which sustains a cause of action or defense, the demurrer must be overruled. (*Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721; *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923.)

Appellant concedes that to be the rule. Let us apply the rule to the facts. Appellant contends when his truck operated by Neill ran through the stop-sign, which sign according to appellee's testimony was located approximately twenty-five feet north of the paved road, appellee was at least 1,000 feet east of the intersection; that appellee's conduct in proceeding towards the intersection at sixty to sixty-five miles per hour under these circumstances constituted a reckless disregard of duty and convicted her of contributory negligence as a matter of law.

Appellant arrives at the 1,000-foot distance by an argumentative process. For present purposes let us, however, assume there was evidence which was susceptible of the interpretation that appellee was 1,000 feet east of the intersection when appellant's truck ran through the stop-sign. Appellant's argument therefor very properly could be, and undoubtedly was, made to the jury. The argument, however, is not good on demurrer. It fails to correctly apply the above-stated rule applicable on demurrer in that it rests on portions of the evidence most unfavorable to appellee instead of portions thereof most favorable to her. The testimony most favorable to her discloses she was on a paved main highway and approximately fifty to seventy-five feet east of the intersection when she first observed appellant's—the second—truck was not stopping at the stop-sign. It was then that appellee was first called upon to act on the truck driver's negligence. At sixty to sixty-five miles per hour appellee traveled at the respective distances of eighty-eight feet and 95.3 feet per second. She, therefore, reached the point of collision in less than one second after being apprised of the truck driver's violation of the law.

After appellee observed that fact what did she do, and did such conduct convict her of contributory negligence as a matter of law? She lifted her foot from the accelerator. Her first thought was to apply the brakes and she thought she had done so momentarily. She then thought if she applied the brakes the collision would be certain, so instead of applying the brakes she attempted to avoid the collision by swinging to the left.

Prior to the enactment of statutes, to be considered presently, giving preference to drivers on a paved road over drivers on unpaved

intersecting roads, this court in *Kersting v. Reese*, 123 Kan. 277, 255 Pac. 74, held:

"In the absence of a legislative provision 'giving motor vehicles moving upon a paved road a preference or right of way at an intersection as against such a vehicle moving upon an unpaved intersecting road, no preference on that ground can be claimed." (Syl. ¶ 4.)

Following that decision, the lawmakers, in 1931, concluded safety of travelers required the giving of a preference to motor vehicles on certain roads. Accordingly it authorized the state highway commission to erect signs at entrances of intersecting state and federal highways and made it unlawful for a driver to disobey such signs. (R. S. 1931 Supp. 8-122; *Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49.) In the Keir case it was said:

"The appellee was acting wholly within her rights in assuming that the appellants would stop before entering the highway, and she cannot be charged with negligence in acting upon such assumption. She can only be charged with negligence under such circumstances from the time that she had knowledge that the appellants intended to disobey the stop sign and enter upon the highway. After she had such knowledge she was bound to use the care of an ordinarily prudent person." (p. 507.)

Following that decision the lawmakers enacted even more stringent preference provisions for the safety of drivers on protected roads. With some minor variations our legislature in 1937 adopted, by the enactment of G. S. 1945 Supp. 8-501 to 8-5,134, the uniform act regulating traffic on highways as recommended by the national conference of commissioners on uniform state laws and the American Bar Association. Certain portions thereof require our attention. G. S. 1945 Supp. 8-550 reads:

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. (b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. (c) *The foregoing rules are modified at through highways and otherwise as hereinafter stated in this article.*" (Our emphasis.)

G. S. 1945 Supp. 8-552 pertains to stop-signs and rights of way at both through highways and other protected highways. It provides:

"(a) The driver of a vehicle shall stop as required by this act at the entrance to a through highway *and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard,* but said driver having so yielded may proceed, and the drivers of all

other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway. (*b*) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto, although not a part of a through highway, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed." (Our emphasis.)

See, also, G. S. 1945 Supp. 8-568 on duty to stop.

In this case we need not debate whether appellee was within the intersection first. Under the testimony most favorable to her she was fifty to seventy-five feet east of the intersection when she first observed the truck was running the stop-sign. Manifestly at that moment she was approaching the intersection so closely as to constitute an immediate hazard. Under these particular circumstances not merely one, but two, provisions of the statute become vital. The first is, the driver of the truck was required to stop. Appellee had the right to assume he would do so. The second and all-important provision is that appellee had the right of way to pass through the intersection. She had the right to assume the truck driver would yield that statutory right to her. In other words, the truck driver was not only required to stop before entering the intersection but was required to remain out of it until the hazard had passed. Under these circumstances and in the absence of a statute limiting the speed in the intersection we cannot say the speed at which appellee was traveling constituted negligence as a matter of law.

In support of the contention appellee's conduct convicted her of negligence as a matter of law appellant cites *McDonald v. Yoder*, 80 Kan. 25, 101 Pac. 468; *Dildine v. Flynn*, 116 Kan. 563, 227 Pac. 340; *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107; *Cruse v. Dole*, 155 Kan. 292, 125 P. 2d 470; *Sayeg v. Kansas Gas & Electric Co.*, 156 Kan. 65, 131 P. 2d 648; *Orr v. Hensy*, 158 Kan. 303, 147 P. 2d 749; *Ray v. Allen*, 159 Kan. 167, 152 P. 2d 851. The cases are not controlling. The first two cases involve collisions within the limits of incorporated towns and presented entirely different circumstances. The third was a guest case and had other dissimilar features. In none of the remaining cases was a stop-sign involved. They pertain to open unprotected intersections and the statutes controlling in this case were not involved or applicable there.

For other cases more nearly similar factually and following the principal enunciated in the Keir case, *supra*, see *Jones v. McCul-*

*lough,* 148 Kan. 561, 83 P. 2d 669; *Fisher v. Central Surety & Ins. Corp.,* 149 Kan. 38, 86 P. 2d 583, and cases therein cited.

Appellant further relies on *Robinson v. Short,* 148 Kan. 134, 79 P. 2d 903. He emphasizes the following statement in the opinion, to wit:

"That she did not correlate her speed with her ability to stop is clear, for she testified that as soon as she saw defendant's truck she put on her brakes, which were in good condition, but notwithstanding, she simultaneously hit the truck. We do not believe that reasonable minds could come to different conclusions respecting her negligence." (p. 139.)

The law applicable to that phase of the case was stated as follows:

"It is negligence as a matter of law for an automobile driver, whose range of vision is limited to three feet ahead of his automobile because of a dust storm or dust cloud, to operate his automobile along a public highway at such a speed it cannot be stopped within the distance that objects on the highway ahead of it can be seen." (Syl. ¶ 3.)

The facts in that case disclosed plaintiff first drove her car for some distance when visibility was only poor and was limited to three blocks. Plaintiff, however, continued to drive after the dust had become very dense and her visibility of objects in the highway had been reduced to three feet. In the opinion we said, "Because of the dust she drove in about the same circumstances as one would who drove an unlighted car on a dark night." It clearly appears the law of that case was not based on plaintiff's conduct at the time her visibility extended a distance of three blocks. It was based on her conduct of continuing to drive on a public highway after she knew she could not see objects more than three feet ahead of her and was unable to stop within the range of that vision. Wholly unlike the case at bar plaintiff in the Robinson case did not have a statutory right of way. She was obliged to know other vehicles might be on the public highway immediately in front of her and was compelled to use that highway with due regard to the rights of others.

Numerous earlier and later cases might be cited in which the general rule stated in the Robinson case was followed. The rule has various exceptions which need not be noted here. It would be quite sufficient to say the general rule does not apply in the situation obtaining in the instant case. It may, however, be well to observe this court has clearly stated the general rule does not apply where a driver, otherwise in the exercise of reasonable care, is suddenly and unexpectedly confronted with an unavoidable obstruction. In

*Menely v. Montgomery*, 145 Kan. 109, 64 P. 2d 550, appellants insisted upon applying the general rule. We said:

"To adopt the contention advocated by appellants as conclusive in every situation where an obstruction unexpectedly appears without warning would result in the erection of a legal monstrosity, the effects of which would be too terrible to contemplate. Carried to its logical conclusion, that doctrine would mean that a vehicle approaching from an opposite direction could suddenly and without warning turn squarely in front of a car traveling at a reasonable and proper rate of speed, in its own proper lane, and thereby make the latter guilty of negligence. The contention is untenable." (p. 113.)

Was it error to overrule appellant's motion for a directed verdict at the conclusion of the trial? Counsel for appellant candidly concedes the evidence offered on behalf of appellant did not materially alter the legal question presented on the demurrer to plaintiff's evidence. In determining whether a plaintiff is guilty of contributory negligence, when tested by demurrer or on motion for a directed verdict, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon. (*Jones v. McCullough*, supra.) It follows the motion was properly overruled.

Appellant argues the petition was insufficient to allege agency of Neill, the truck driver, and hence evidence of such agency was inadmissible. The parties stipulated as follows:

"It is stipulated, subject to the objection of the defendant hereinafter made, by and between the plaintiff and defendant, that:

"1. C. C. Neill was at the time of the accident, driving defendant's truck.

"2. That said C. C. Neill was the servant and employee of the defendant.

"3. That said C. C. Neill at the time of the accident was acting as servant, employee and agent, and on the business of the said defendant, Tom Bennett.

"The defendant, Tom Bennett, objects to Item 3 set out in the stipulation above for the reason that the same is incompetent, irrevelant, and not within the issues of this case.

"THE COURT: It will be overruled."

The material portion of the petition alleged:

"Plaintiff . . . was involved in a collision with a truck which was then and there owned by the defendant and which was at the time being driven by C. C. Neill, who was then the agent, servant and employee of the defendant, Tom Bennett, employed to drive said truck in the hauling of certain feed and was at the time operating said defendant's truck under the control, guidance and instructions of the defendant, Tom Bennett."

The answer contained a general denial but was unverified. It therefore admitted such allegations of agency as were well pleaded.

(G. S. 1935, 60-729; *Olsen v. Lambert,* 158 Kan. 94, 145 P. 2d 159.) Appellant argues the allegations of agency were insufficient and cites *Willett v. McCormick,* 161 Kan. 658, 170 P. 2d 821. The petition in that case failed to allege that at the time of the collision the driver of the truck was operating it on business for the defendant. The instant petition is not subject to that defect. It constitutes a sufficient allegation of agency for the purpose here involved.

Our attention is directed to the admission of one item of evidence over appellant's objection. Counsel for appellant commendably concedes the point is perhaps of minor importance. If appellant is correct the error could not well be said to have affected appellant's substantial rights. Under such circumstances we cannot reverse the judgment. (G. S. 1935, 60-3317.) The motion for a new trial was properly overruled.

The judgment is affirmed.