## WHITTINGTON v. MAYBERRY.

## THOMASON v. MAYBERRY.

### Nos. 4178, 4179.

United States Court of Appeals
Tenth Circuit.

July 5, 1951.

Vincent F. Hiebsch, Wichita, Kan. (Milton Zacharias and Yale W. Gifford, Wichita, Kan., were with him on the brief), for appellants.

W. A. Kahrs, Wichita, Kan. (Robert H. Nelson, Clarence N. Holeman and Keith L. Wallis, Wichita, Kan., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The appellants filed two actions against appellee to recover damages for injuries suffered in an automobile collision. The case was tried to a jury. At the conclusion of all the evidence, the court sustained a motion by the defendant for an instructed verdict and directed the jury to return a verdict for defendant. Judgment was thereupon entered for defendant on the verdict so returned. This appeal raises the sole question whether there was an issue of fact which should have been submitted to the jury.

The evidence necessary for a consideration of this question is substantially as follows: Lorena Whittington testified that on June 30, 1949, she left Los Angeles, California, for a vacation, taking with her her daughter and a stepdaughter. On the day of the accident, she was traveling in an Easterly direction on U. S. Highway 54 toward Wichita, Kansas. It had been raining off and on during the day. It had ceased raining when she left Kingman, Kansas, but began again about twenty minutes before the accident occurred. She testified that she had been driving at about 50 miles an hour, but when the rain began, she slowed down to about 35 miles an hour. Just before the accident, the right wheels of her car slipped off the paved portion of the highway and dropped into a rut some 5 or 6 inches below the level of the pavement. She immediately applied her brakes until she reduced her speed to approximately 15 miles per hour, when she attempted to turn back upon the pavement. The front wheels turned suddenly onto the pavement, jerking the steering wheel out of her hands and the automobile started diagonally across the highway in a Northeasterly direction. At that time the car was out of control. She saw a telephone pole ahead of her, which she was hoping she could miss. When she was about in the center of the highway, she looked to the West and saw no car approaching; then she looked to the East and saw the defendant, Willard Mayberry, approaching from that direction at a very fast rate of speed, which she estimated at 70 miles per hour. She testified that she counted three telephone poles between her and Mr. Mayberry and made a picture of it in her mind; that at a later date she measured the distance between these poles and that the distance was 540 feet. She estimated that Mayberry was about 500 feet away, when she first saw him and when her car was out of control on the highway. She further testified that she thought she had traveled about 50 feet diagonally down the highway, after the wheels went back onto the highway; that after she applied her brakes when the car first left the pavement, she traveled about 150 feet before she attempted to turn the car back onto the highway. On cross-examination, she testified that she had brought the car almost to a stop and that she was going about 5 miles an hour at the time of the collision; that she made no attempt to stop the car because the car was just skidding around. The evidence established that the defendant's car struck plaintiff's car around the right front door. It is conceded that plaintiff's car came to rest about twenty feet in a Northeasterly direction from defendant's car. The defendant, Willard Mayberry, testified that he was traveling West on the highway in his Chevrolet automobile at a speed of about 50 miles per hour; that he observed appellant's car and became actually conscious of it when the right wheels skidded off the pavement; that he watched the other car and came to a stop as quickly as he could; that he estimated appellant's car was traveling as fast or faster than he was and, at the time of impact, appellant's car was traveling at about 20 miles per hour; that at the time appellant's car left the pavement, it was about 300 feet away and that it traveled for about 125 to 150 feet before it turned back on the pavement. Expert evidence was introduced establishing that at 50 miles per hour, including reaction time, a Chevrolet car can be stopped in 185 feet and that at 70 miles an hour it can be stopped in 325 feet and that on a wet pavement the distance would be increased twenty-five per cent. While there

was other evidence relating to minor matters, the above is all the evidence necessary to consider in determining the correctness of the ruling appealed from.

We do not have on this appeal any question of contributory negligence on appellant's part. The trial court's ruling was predicated on the sole ground that there was no probative evidence, tending to show negligence on appellee's part. On a motion for a directed verdict for defendant, Kansas has repeatedly held that in testing the sufficiency of the evidence, the evidence most favorable to the plaintiff will be taken as true and the unfavorable testimony will be disregarded.[1] We applied this rule in the case of Bailey v. Slentz, 10 Cir., 189 F. 2d 406.

When the defendant saw plaintiff's car in trouble coming toward him, it was his duty to do what a reasonable prudent person would do to avoid an accident. He testified, "Of course, I watched the other car; came to a halt as quickly as possible." At the time he saw plaintiff's car leave the pavement, according to his own testimony, he was about 300 feet away and was traveling at a speed of about 50 miles an hour. At that speed on a wet pavement, under the undisputed evidence, he could have brought his car to a stop within approximately 231 feet. According to appellant's testimony, he was 500 feet away when her car was out of control in the middle of the highway, coming at a very fast rate of speed, which she estimated at 70 miles per hour. Even at that high maximum rate of speed and on a wet pavement, he could have stopped his car within approximately 406 feet. The skid marks of his car on the pavement show that he skidded his wheels only 87 feet. If these were the facts, it would seem that appellee could have brought his car to a stop before the crash occurred and failure to do

so would constitute negligence on his part. It may be that he was much closer than the distance testified to by appellant, or even closer than the estimated distance to which he testified, when it became apparent that danger impended. As pointed out by us in Bailey v. Slentz, supra, the time interval in such situations is very brief. Ordinarily only a few seconds of time are involved. Under such circumstances, one cannot accurately measure distances or estimate the speed of approaching vehicles. But under the most favorable light doctrine, for the purpose of considering a motion for a directed verdict for appellee, Mrs. Whittington's testimony must be taken as true. So considered, it presented a jury issue and the motion for a directed verdict should have been overruled. It then became the duty of the jury to consider all the evidence, the time factor involved, and all the facts and surrounding circumstances in reaching its verdict.

Appellee recognizes the most favorable testimony rule on a motion for a directed verdict, but seeks to avoid its impact by the assertion that the undisputed physical facts destroy any probative value of appellant's testimony. This court has in numerous decisions recognized the rule that when the physical facts positively contradict the testimony of a witness, the oral testimony is to be disregarded.[2]

We cannot, however, agree with appellee that there are such undisputed physical facts in this case. The facts which appellee contends are physical facts destroying Mrs. Whittington's testimony as we analyze his brief are these. It is argued that according to her testimony, when appellee's car was 500 feet away, coming at a speed of 70 miles an hour, her car was directly across the highway, headed in a Northwesterly direction, and the center of

1. Goodloe v. Jo-Mar Dairies, 163 Kan. 611, 185 P.2d 158; Revell v. Bennett, 162 Kan. 345, 176 P.2d 538; Sponable v. Thomas, 139 Kan. 710, 33 P.2d 721; Hill v. Southern Kansas Stage Lines Co., 143 Kan. 44, 53 P.2d 923; Keir v. Trager, 134 Kan. 505, 7 P.2d 49, 81 A.L.R. 181.

2. F. W. Woolworth Co. v. Davis, 10 Cir., 41 F.2d 342, 343; Blackley v. Powell, 4 Cir., 68 F.2d 457; Chicago, M., St. P. & P. R. Co. v. Linehan, 8 Cir., 66 F.2d 373; Storey v. United States, 10 Cir., 60 F.2d 484.

her car was even with the center of the highway; that since the North side of the highway was only 9 feet wide and the impact occurred 5 feet from the North edge of the highway, her car moved at the most 4 feet after she claims she saw appellee's car 500 feet away. From this it is argued that actual computation based upon this testimony would show that appellee would have to travel between 240 and 250 miles an hour to reach the point of impact. It is also argued that these facts, plus the further facts that appellee's car was hurled back 15 feet after the impact and appellant's car proceeded about 20 feet in a Northeasterly direction completely destroys her testimony that she was traveling only about 5 miles an hour at the time of the collision. There is no direct evidence in the record that appellee's car was driven back by appellant's car. The behavior of two cars that collide is uncertain and depends upon any number of factors. The position of the two cars involved in the accident after the impact does not necessarily establish physical facts from which can be determined absolutely the speed or exact direction of each car at the time of the impact.

As stated by us in Kansas City Public Service Co. v. Shephard, 10 Cir., 184 F. 2d 945, 947, "In determining whether physical facts rule has controlling application with dispositive effect, a court should bear in mind that frequently unlooked-for results attend meeting of interacting forces or circumstances, and that often times imponderables and variables difficult of solution present themselves, and doctrine should be applied only where evidence on which plaintiff relies is clearly contrary to some immutable law of physics or is hopelessly in conflict with one or more established and uncontroverted physical facts." Such is not the case here.

We think from all the evidence there was a disputed issue of fact, which should have been submitted to the jury. The judgment is accordingly reversed and the cause is remanded with directions to grant a new trial.