No. 42,509

Tom L. Casement, *Appellant,* v. Gerald W. Gearhart and Granville E. Canady, Jr., d/b/a Gearhart-Canady Drilling Company, *Appellees.*

(370 P. 2d 95)

Opinion filed April 7, 1962.

*Frank G. Theis* and *Richard R. Rock,* both of Arkansas City, argued the cause and were on the brief for the appellant.

*I. H. Stearns,* of Wichita, and *Donald Hickman,* of Arkansas City, argued the cause, and *Ben Foster,* of Wichita, and *Kirke W. Dale,* of Arkansas City, were with them on the brief for the appellees.

The opinion of the court was delivered by

Price, J.: This was an action to recover for personal injuries. A ruling on the demurrer to plaintiff's evidence was reserved. Defendants then introduced their evidence.

Plaintiff introduced evidence in rebuttal.

Defendants offered no evidence in surrebuttal.

At the close of all the evidence, both sides having rested, defend-

ants renewed their demurrer and, in addition, moved for judgment upon the entire record.

The court sustained the motion for judgment on the ground "the record in this case fails to prove or show any cause of action in favor of the plaintiff and against these defendants," and took the case from the jury.

Plaintiff has appealed from that order and from the denial of his motion for a new trial.

Highly summarized, the evidence was as follows:

Plaintiff, forty-seven years of age, was engaged in a bulk gasoline and oil business in Arkansas City. His duties were to take orders for and deliver gasoline and oil to local service stations, farmers and other quantity customers. He owned his own truck and other equipment used in his business. He had been so engaged for a number of years and during that period had hauled several thousand loads of gasoline, diesel fuel and oil to customers. He was thoroughly familiar with the dangerous characteristics of his products.

Defendants were the owners of an oil-drilling rig being operated at a lease site in Cowley county. It was under their exclusive control. On May 26 and 31, 1958, plaintiff delivered petroleum products to defendants. He was familiar with oil-rig operations. After he left the rig site on Saturday afternoon, May 31, defendants lighted the "sample stove," which was a piece of equipment used to dry well cuttings. Apparently it had been made by defendants from odds and ends of pipe and scraps of metal. The flame was concealed within the stove, which was down on the ground among other equipment. In order to see the flame one would have to stoop down low and look through a small opening near the ground.

At about 5:30 o'clock on the afternoon of Monday, June 2, plaintiff, pursuant to a call by defendants, arrived at the rig site with 100 gallons of gasoline, 750 gallons of diesel fuel, and a barrel of oil. It was broad daylight, and the temperature was 85 to 90 degrees. A breeze of approximately five miles per hour was from the south. He unloaded the 750 gallons of diesel fuel. The next thing to do was to fill a barrel with the gasoline. Due to the limited space available because of the various equipment and machinery, he backed his truck into a position whereby the rear end of it was six or seven feet east of the barrel into which he was to pump the gasoline. The opening in the end of the barrel, which

was on a rack provided by defendants, was three feet above the ground and about fifteen feet south of the small sample stove. The stove was lighted, and defendants' employees were aware of the fact. The flame was not visible, except as above related, and the stove gave no outward evidence of being lighted through smoke, heat or color. Plaintiff was not advised by defendants' employees that the stove was lighted.

As plaintiff began pumping the gasoline from his truck into the small opening in the barrel, fumes rolled out of the barrel—as could be expected on a hot day. The engine of plaintiff's truck was running at the time so as to operate the pump. After 35 gallons of gasoline had been pumped into the barrel there was a flash explosion near where the sample stove was located. Plaintiff sustained severe burns, to recover for which this lawsuit was filed.

Very briefly stated, the over-all theory of plaintiff—an admitted business invitee on defendants' premises—is that defendants—under the circumstances of the situation—were negligent in failing to warn him of the "hidden" flame in the sample stove, which, when the gasoline fumes came in contact with it—brought about the flash explosion and fire.

Also, very briefly stated, defendants, on the other hand, contend: There was an utter failure of proof of negligence on their part. Plaintiff, an experienced hand in the handling of gasoline and oils, was in as good position as defendants' employees to comprehend the situation and is presumed to have seen the sample stove which was in plain sight. At no time did plaintiff testify that he did not know of the stove or that it was lighted. If in fact he did know of it, then he stood in the same position as defendants with respect to negligence. Plaintiff's entire case is based upon speculation and conjecture as to the cause of the fire and he attempts to pyramid presumptions upon presumptions in order to make out a case.

The trial court having sustained defendants' motion for judgment upon the entire record—the question presented is whether the evidence, taken as a whole, was sufficient to warrant submission of the case to the jury.

Where no evidence is presented, or the evidence presented is undisputed and is such that reasonable minds could not accept it as sufficient to establish the existence of a fact, it becomes the duty of the court to remove the issue from the jury. (*Hickey v. Fox-*

*Ozark Theatres Corp.*, 156 Kan. 137, 142, 131 P. 2d 671; *Schmid v. Eslick*, 181 Kan. 997, 1004, 317 P. 2d 459.)

On the other hand—as in the case of a demurrer—in reviewing the propriety of an order sustaining a motion for a directed verdict, or, as here, a motion for judgment upon the entire record, we are required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought (*Weber v. Wilson*, 187 Kan. 214, 216, 356 P. 2d 659), and it follows that where the evidence is such that reasonable minds could reach different conclusions thereon the motion must be denied and the matter submitted to the jury. (*Revell v. Bennett*, 162 Kan. 345, 176 P. 2d 538.)

The abstracts in this case contain 161 pages and include a number of photographs of the scene. In addition, we have been furnished with excellent briefs by both parties covering the law on all phases of the case. The entire record has been examined and consideration has been given to all contentions, but in view of our conclusion a detailed discussion of the evidence and the many arguments made would serve no good purpose. With full recognition of the rule that a jury should not be permitted "to roam the unfenced fields of speculation and conjecture," we nevertheless feel compelled to hold that the evidence on the many features of this case was such that it should have been submitted to the jury for its determination of the ultimate questions involved.

The order sustaining defendants' motion for judgment is reversed with directions to grant a new trial.

PARKER, C. J., and PRICE, J., dissent from paragraph 3 of the syllabus and the corresponding portion of the opinion.

SCHROEDER, J., dissenting: The conduct of the plaintiff, in view of the physical facts which are not in dispute, establishes contributory negligence as a matter of law.

The gasoline tank was being filled on a *hot dry day* and was located *only fifteen feet, a mere five paces*, almost directly south of a sample stove which was burning, with a wind of five miles per hour from the south. The sample stove was plainly visible. Furthermore, the plaintiff in backing the fuel truck into position backed over a hose leading from a large butane tank located southeast of the sample stove. This hose was in plain view. In addition the

truck motor was running, and had been running for some time on this particular hot day in arriving at the location. As the tank was being filled the truck was located on a line almost as directly downwind from the gasoline tank as was the sample stove.

Now to say that an experienced man, who had for years delivered petroleum products to oil rigs in the field, could *possibly* be free from negligence in positioning his truck in this manner to fill a gasoline tank under these circumstances, particularly where the motor of the fuel truck is running, and without specifically checking for a flame in the sample stove, to me is untenable.

Speculation whether the explosion may have been caused by ignition from the exhaust of the truck or from the flame in the sample stove is immaterial.

I therefore respectfully submit the trial court should be affirmed.