No. 44,088

CLARENCE H. WILLIAMS, *Appellant,* v. BENEFIT TRUST LIFE INSUR-
ANCE COMPANY, *Appellee.*

(408 P. 2d 631)

Opinion
filed December 11, 1965.

*James L. Rose,* of Topeka, argued the cause, and *George E. McCullough,
W. L. Parker, Jr., Robert B. Wareheim, and Reginald LaBunker,* all of Topeka,
were with him on the brief for the appellant.

*Charles S. Arthur,* of Manhattan, argued the cause, and *Charles D. Green,*
of Manhattan, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action on an "Accident and Sickness Income"
insurance policy.

The insured will be referred to as plaintiff and the insurance com-
pany as defendant.

Basically, the dispute arises over the question as to which benefits
of the policy apply—sickness or accident.

At the close of plaintiff's evidence the court sustained defendant's
motion for a directed verdict in its favor.

Plaintiff has appealed from that ruling.

A copy of the entire policy is not included in the record on ap-
peal. Portions of it are abstracted. Other portions are set out in
full. It was issued on August 1, 1960. It provides for a monthly
*sickness* benefit of $100.00 for a maximum period of *twelve months.*
The monthly *accident* benefit is $100.00 for a maximum period of
*"lifetime."* Section "E" of the policy lists specific loss benefits such

as for the loss of a hand, foot or eye—and with which we are not concerned.

We here quote or summarize other provisions of the policy.

"F. MONTHLY ACCIDENT BENEFIT

"(1) TOTAL DISABILITY—When 'such injury' shall, independently of any and all other causes, within twenty days of the date of the accident, totally and continuously disable you and prevent you from performing every duty of your occupation, the Association will pay you at the rate of the Monthly Accident Benefit for loss of time while you are so disabled, for a period not to exceed twelve months.

"At the end of such twelve months, the Association will continue to pay you at the same rate so long as you shall live and be totally and continuously disabled as the result of 'such injury' and be prevented from engaging in any occupation or work for wages or profit, but the total period of payment under this section F (1) shall not exceed the 'Monthly Accident Benefit—Maximum Period' shown in the Schedule.

"(2) DELAYED TOTAL DISABILITY—If 'such injury' shall not within twenty days but shall within one hundred days from the date of the accident wholly disable you, the Association will pay you for the period of continuous total disability (not exceeding three months) at the rate of one-half the Monthly Accident Benefit.

"(3) PARTIAL DISABILITY—If 'such injury' shall, commencing with the date of the accident or immediately following total loss of time, prevent you from performing one or more but not all of the daily duties of your occupation, the Association will pay you for such period of continuous partial disability (not exceeding three months) at the rate of one-half the Monthly Accident Benefit.

"(4) GENERAL CONDITIONS—Monthly Accident Benefits will be payable only while you are under the regular care and treatment of a licensed physician or surgeon other than yourself. When an accident causes loss for which a benefit is payable under section E, no Monthly Accident Benefit will be payable for disability occurring thereafter as a result of the same accident."

Section "G" concerns surgical and medical indemnity for non-disabling injuries, with which we are not concerned.

"H. MONTHLY SICKNESS BENEFIT

"When 'such sickness' shall, commencing during the term of this policy, wholly and continuously disable you and prevent you from engaging in any occupation or work for wages or profit, the Association will pay you for loss of time at the rate of the Monthly Sickness Benefit specified in the Schedule. Such payment shall be made for so long a time as you remain so disabled and are under the regular care and treatment of a legally qualified physician or surgeon other than yourself, but not exceeding during any one period of disability the amount of time specified in the Schedule as 'Monthly Sickness Benefit—Maximum Period.'

"Any period of disability due to sickness will, if such period commences during the term of this policy and results from the same or related cause or causes of a prior period for which benefits have been paid under this section

H, be considered a continuation of the prior period unless the periods are separated by an interval of six months during which you continuously perform every duty of your regular occupation.

"Successive periods of disability due to sickness and resulting from different causes will, if such periods commence during the term of this policy, be considered as the same period unless they are separated by your return to active full time employment.

### "I. EXCEPTIONS AND REDUCTIONS

"(1) This policy provides no benefit for any loss, fatal or non-fatal, caused by: (a) suicide (or any attempt thereat) while sane or insane; (b) war or any act of war, whether declared or undeclared; (c) pregnancy, childbirth, or complications therefrom. The Association shall not be liable for (d) any loss occurring while you are engaged in any capacity in military, naval, or air service of any country (any premium paid to the Association for any period not covered by this policy by reason of military, naval, or air service will be returned pro rata); not for (e) death or injury incurred to which a contributing cause was your commission of, or attempt to commit a felony, or to which a contributing cause was your being engaged in an illegal occupation.

"(2) (a) 'Such injury,' as the term is used in this policy, is defined as bodily injury brought about by an accidental cause and not otherwise. Bodily injury, fatal or non-fatal, not resulting from accidental cause shall be considered only under the sickness provisions of this policy. (b) *Any loss, fatal or non-fatal, due wholly or in part to any disease or sickness, or medical or surgical treatment therefor, shall be classified as sickness and not otherwise.* (c) Any loss, fatal or non-fatal, due to hernia of any type, heatstroke, or sunstroke shall be classified as sickness and not otherwise." (Emphasis supplied.)

Plaintiff became disabled and made claim under the policy. Defendant contended that plaintiff had for many years been suffering from osteoarthritis and that the injury complained of simply aggravated such existing condition, and therefore under Section I (2) (b) of the policy—above quoted with emphasis—the loss must be classified as being due to *sickness*. Under this theory and contention defendant paid to plaintiff the sum of $100.00 per month for twelve months—and refused further payment.

Plaintiff contended that his disability resulted solely through external, violent and accidental means, that he was totally disabled, and therefore should be paid $100.00 per month under the *accident* benefit provision of the policy for as long as his disability continues.

No settlement of the dispute being reached, plaintiff brought this action. The petition and answer alleged the foregoing contentions.

Plaintiff's evidence showed the following:

Plaintiff was fifty-seven years of age and had worked for a railroad for thirty-three years as a section-hand. The nature of his work called for a great deal of heavy lifting. He had never been

absent from work because of any arthritic condition and he had never "begged off" from any work assigned to him. On the morning of February 5, 1962, as he was going to work he slipped on the back steps of his home and fell, injuring both knees. After a few minutes he raised himself and, although still in pain, went to work. He was able to do some of his work in a sitting position. That evening both of his knees were greatly swollen. He went to work the next day but on February 7 went to see his doctor. The doctor prescribed treatment, which included lying in bed for three days and then using crutches for six months. Since then he has been able to walk only with the aid of a cane. He now has trouble walking up and down steps and is unable to do any heavy lifting.

His doctor testified that plaintiff's history showed that he had had an injury to his right knee some thirty years previously. The doctor's diagnosis was that he showed signs of osteoarthritis—a condition of joints normal to aging which is caused by "wear and tear." His testimony was that many people who have osteoarthritis "live with it quite well" but that such condition makes the joint more susceptible to injury and when such a joint is injured the injury is more pronounced. He further testified that osteoarthritis— "which every one will have sooner or later if he lives long enough" —is only one type of arthritis and that there are other types which are caused by infections. The doctor also testified that plaintiff was totally disabled; that very little improvement in his condition could be expected; that people have been known to have extreme osteoarthritis without ever being disabled, and that it would be impossible to say whether, absent the accidental fall, the osteoarthritis would have ever disabled him. In answer to a hypothetical question the doctor testified that in his opinion, based upon a reasonable medical certainty, the fall was the precipitating cause of plaintiff's present disability.

As before stated, at the close of plaintiff's evidence defendant moved for a directed verdict in its favor—and the motion was sustained. In its ruling the court commented that the insurance policy complied with statutory requirements and that under Section I (2) (b), above quoted, it was clear that plaintiff's evidence showed that most, if not all, of his trouble was from his osteoarthritis and therefore, under the mentioned provision, his disability must be classified as *sickness* and as he had been paid sickness benefits in full—there remained nothing to submit to the jury.

Before discussing contentions made by plaintiff in his appeal from that ruling, attention should be called to pertinent provisions of K. S. A. 40-2202, which read:

"(A) No policy of accident and sickness insurance shall be delivered or issued for delivery to any person in this state unless:

. . . . . . . . . . . .

"(5) the exceptions and reductions of indemnity are set forth in the policy and, . . . are printed, at the insurer's option, either included with the benefit provision to which they apply, or under an appropriate caption such as 'EXCEPTIONS,' or 'EXCEPTIONS AND REDUCTIONS,'. *provided that if an exception or reduction specifically applies only to a particular benefit of the policy, a statement of such exception or reduction shall be included with the benefit provision to which it applies;* . . ." (Emphasis supplied.)

Plaintiff first contends that Section I (2) (b) of the policy is in fact a limitation on the benefits under Section F of the policy providing for monthly accident benefits, and therefore, under the emphasized portion of the statute above quoted, should appear in Section F rather than being "hidden" in Section I which covers exceptions and reductions. It therefore is contended that, being contrary to statute, such provision of the policy is to be disregarded —as though it did not exist.

We think plaintiff's contention on this point is without merit and cannot be sustained. The provision in question appears in the "EXCEPTIONS AND REDUCTIONS" portion of the policy and is in the nature of a definition of the contract of insurance. It does not alter the terms of the policy, and does not specifically apply "only to a particular benefit of the policy." Rather, it is a provision applying to the policy as a whole, and is properly included under the "EXCEPTIONS AND REDUCTIONS" section. To this extent we agree with the trial court's ruling.

Plaintiff's chief contention, however, is that the jury should have been permitted to determine the question as to the underlying proximate cause of his disability, and that the court erred in concluding, as a matter of law, that it was his preexisting arthritic condition.

The contention is well taken.

In ruling on a motion for a directed verdict the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon the motion must be denied and the matter submitted to the jury (*Revell v. Bennett,* 162 Kan. 345, 176

P. 2d 538, *Casement v. Gearhart,* 189 Kan. 442, 370 P. 2d 95). Plaintiff's evidence has heretofore been summarized, and need not be repeated. Under the mentioned rule the question should have been submitted to the jury.

The judgment is therefore reversed with directions to grant a new trial.

FATZER, J., concurring: I concur in the reversal of this case for the reason stated in paragraph 2 of the Syllabus, but feel compelled to note briefly my objection to the district court's construction of the policy and its application of I (2) (b) to the evidence.

In my judgment, the provisions of I (2) (b) have no application to the evidence presented. The evidence clearly established that plaintiff suffered an accidental injury when he fell on the porch of his home on February 5, 1962. That occurrence contained all the elements of an accident recognized by this court—it was "undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often (but not necessarily) accompanied by a manifestation of force." (*Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793; *Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197.)

Section I (2) (a) of the policy defines "such injury" which determines when monthly accident benefits under F (1) occur, as follows: " 'Such injury' as the term is used in this policy, is defined as *bodily injury* brought about by an *accidental cause* and *not otherwise.*" The definition continues and clearly determines by its own language when the accident benefits of the policy shall apply and when the sickness benefits of the policy shall apply, and states: "Bodily injury, fatal or non-fatal, *not resulting from accidental cause* shall be considered only under the *sickness provisions* of this policy."

The only exception with respect to when *bodily injury* brought about by *accidental cause is not payable* under the accident benefit section of the policy is a loss defined in 2 (a) (c) as hernia of any type, heatstroke or sunstroke which shall be classified as sickness. This provision of the policy is not here involved. Total disability which the plaintiff seeks, is payable under F, monthly accident benefit when "such injury," *i. e.,* when *bodily injury* is brought about by *accidental cause* (I [2] [a]), which, independently of any and all other causes, totally and continuously disables the insured.

As established by the evidence, the plaintiff's fall produced his bodily injury, and the fact that it "triggered" the dormant osteo-arthritic condition in his knees, which had not previously prevented his working, is virtually of no significance. Under no circumstances can it be said that his condition became one which might be considered under I (2) (b) of the policy. In *Silverstein v. Metropolitan Life Ins. Co.*, 254 N. Y. 81, 171 N. E. 914, the insured was lifting a milk can into an icebox and slipped and fell, the can striking him in the abdomen causing great pain and an operation revealed that he had a duodenal ulcer which had been previously unknown, the blow to the ulcer resulting in peritonitis which caused the injured's death. In the opinion Mr. Justice Cardozo said:

"We think the evidence sustains a finding that the ulcer was not a disease or an infirmity within the meaning of the policy . . . A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules." (p. 84.)

In *Thibodeaux v. Pacific Mutual Life Insurance Co.*, 237 La. 722, 112 So. 2d 423, the insured had a congenital back defect and like the plaintiff, lived with the defect and performed heavy manual labor up to the day of his accident; the congenital defect making the injury more serious than it might have been. In the opinion it was said:

"A review of authorities convinces us that where an insured has a dormant condition and such condition is awakened by accident, the condition is not deemed the cause of the disability or loss which the insured suffers. (Cases cited.)" (p. 735.)

Plaintiff's bodily injury was brought about by accidental cause, independently of any and all other causes, and the fact that the accident also served to aggravate or accelerate an existing condition or intensify the affliction does not change its occurrence as being brought about by accidental cause.

It is well established in this jurisdiction that no standard of health is prescribed for workmen, and the district court should look to the injury and not to the preexisting infirmities to determine the plaintiff's benefits under the policy.